**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

THELMA I. CULLER,

     Plaintiff-Appellant,

v.

LARRY G. MASSANARI, * Acting
Commissioner of Social Security,

     Defendant-Appellee.

No. 00-3163
(D.C. No. 96-CV-4164-SAC)
(D. Kan.)

ORDER AND JUDGMENT **

Before **EBEL** , **PORFILIO** , and **LUCERO** , Circuit Judges.

Plaintiff appeals the district court's denial of her application for attorney

fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. In a

previous decision, the district court reversed the Commissioner's denial of Social

---

\*     On March 29, 2001, Larry G. Massanari became Acting Commissioner of
Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Massanari is substituted for Kenneth S. Apfel as the
appellee in this action.

\*\*     The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Security benefits to plaintiff and remanded the action to the Commissioner for further proceedings. The district court determined that the administrative law judge ("ALJ"), whose decision became the final decision of the Commissioner, had committed three reversible errors.

First, the ALJ failed to include all of plaintiff's impairments in his hypothetical questions to the vocational expert ("VE"). In particular, the ALJ failed to question the VE about plaintiff's severe emotional and mental problems, including her limited reading and comprehension skills. Second, the ALJ did not follow the correct legal standards in evaluating plaintiff's allegations of pain. Specifically, the ALJ failed to link his findings to substantial evidence in the record and completely omitted one of plaintiff's impairments from his pain analysis under Luna v. Bowen , 834 F.2d 161 (10th Cir. 1987). Finally, the ALJ erroneously discounted the opinion of a treating physician and substituted for it the opinion of a non-examining medical advisor.

After the district court reversed the denial of benefits, plaintiff filed an application for attorney fees under the EAJA. The EAJA allows a prevailing party to recover litigation costs against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The parties do not dispute that plaintiff qualifies as a prevailing party for EAJA purposes.

-2-

The district court nonetheless denied the fee application because it determined that the government's position was "substantially justified." Id.

"[T]he government bears the burden of showing that its position was substantially justified. To do so, the government must prove that its case had a reasonable basis in law and in fact." Hadden v. Bowen, 851 F.2d 1266, 1267 (10th Cir. 1988) (citations omitted). "[T]he reasonableness test breaks down into three parts: the government must show that there is a reasonable basis for the facts alleged[;] that there exists a reasonable basis in law for the theory it propounds; and that the facts alleged will reasonably support the legal theory advanced." Gatson v. Bowen, 854 F.2d 379, 380 (10th Cir. 1988) (quotations omitted).

"In determining whether the government's position was reasonable, the trial judge must make a separate review of the government's position to determine whether it was substantially justified. The term 'position' includes the government's position both in the underlying agency action and during any subsequent litigation." Hadden, 851 F.2d at 1267 (citations omitted). We review the district court's determination that the government's position was substantially justified under an abuse of discretion standard. Id. at 1268. In this case, we find dispositive the Commissioner's failure to demonstrate a reasonable basis for the ALJ's omission of plaintiff's mental and emotional impairments from his

hypothetical questions to the VE, especially the limitations on her ability to read and comprehend.

In late April 1987, plaintiff suffered a back injury while working as a nurse's aide and was unable to return to work. As part of her rehabilitation effort, plaintiff began attending junior college in 1988 to earn an associate degree that would allow her to seek other employment. She graduated in May 1992 and applied for many jobs in the following months, but she was unable to find employment.

In December 1992, plaintiff filed her application for benefits, alleging she had been disabled since May 3, 1987. After a hearing before the ALJ in October 1994, plaintiff's counsel informed the ALJ that he wished to amend the onset date to June 1991. Counsel reasoned that because plaintiff could not receive back benefits under her December 1992 application for a period greater than eighteen months, alleging an onset date earlier than June 1991 would be futile. Plaintiff's insured status expired on December 31, 1992.

The medical evidence showed that, at the time plaintiff applied for disability benefits, she suffered from low back problems, varicose veins with venous ulcers, mitral valve prolapse without cardiac disease, a history of right urethral obstruction, urinary incontinence, asthma, and chest pain. During the course of the hearing before the ALJ, plaintiff had difficulty comprehending

straightforward questions from the ALJ and appeared to be crying throughout much of the hearing. These circumstances prompted the ALJ to refer plaintiff to Dr. Whitten, a clinical psychologist, for a mental status review, intelligence appraisal, and objective personality testing.

Dr. Whitten examined plaintiff in February 1995 and issued a report diagnosing her with "Personality Disorder NOS [3] with histrionic, compulsive, self-defeating, and codependent features" and giving her a GAF [4] score of 45 because "[e]motional issues and personality structure cause serious interference in social and occupational functioning and in marital relationships." (II Appellant's App. at 327.) Dr. Whitten's testing also revealed that plaintiff had only a sixth grade level of word pronunciation and was not able to recognize the

_____

[3]     "NOS" stands for "Not Otherwise Specified." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 4 (4th ed. 1994). The category of Personality Disorder NOS "is for disorders of personality functioning that do not meet criteria for any specific Personality Disorder. An example is the presence of features of more than one specific Personality Disorder that do not meet the full criteria for any one Personality Disorder ('mixed personality'), but that together cause clinically significant distress or impairment in one or more important areas of functioning (e.g., social or occupational)." Id. at 673.

[4]     "GAF" stands for "Global Assessment of Functioning," and reflects "the clinician's judgment of the individual's overall level of functioning." Id. at 30. GAF scores range from 0 to 100. A GAF score of 45 reflects that the individual has either "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Id. at 32.

words she mispronounced. Dr. Whitten concluded that she was "possibly significantly limited in reading and reading comprehension." (Id. at 326.) [5]

At the October 1994 hearing, the ALJ received testimony from plaintiff, from a medical advisor, and from a VE. Because the ALJ had not yet received Dr. Whitten's report, his questions to the VE did not include any of the mental or emotional limitations recited in that report. Even after receiving Dr. Whitten's report detailing those limitations, however, the ALJ did not pose additional questions to the VE or order a supplemental hearing. Instead, he simply held that he could not consider her mental and emotional impairments because "claimant's emotional problems, which are now fairly severe, did not manifest themselves until after December 31, 1992, the date that she last met the insured requirements of the Social Security Act." ( Id. at 20.) Based on the VE's testimony that plaintiff could perform the job of medical receptionist for a hospital, initial review clerk for an insurance company, or appointment clerk for a medical office or hospital, the ALJ concluded at step five of the sequential analysis that plaintiff was not disabled.

The district court determined that the ALJ's finding that plaintiff's emotional and mental limitations did not manifest themselves until after

---

[5]     Dr. Whitten also found plaintiff to be     deficient in mental arithmetic, "making many errors in calculation at fairly simple levels." (II Appellant's App. at 325.)

December 1992 was not supported by substantial evidence. The court noted references to similar emotional problems in the evidence that predated December 1992 and also determined there was no basis for concluding that plaintiff's limited reading and comprehension difficulties arose only after that date. [6] Because the ALJ did not include this "fairly severe" impairment in his questions to the VE, the district court concluded that the VE's testimony could not constitute substantial evidence to support the ALJ's determination that there were other jobs in the national economy that plaintiff could perform despite her impairments.

In his merits brief, the Commissioner attempted to defend the ALJ's omission of plaintiff's mental and emotional limitations from his questions to the VE on the following grounds: (1) neither plaintiff's work nor her medical records established that her emotional problems were disabling prior to December 1992; (2) plaintiff did not allege any mental or emotional problems in her application, she sought no treatment for them, and she did not complain of them to physicians who treated her during the relevant period; (3) plaintiff attended junior college during the relevant period and was on the Honor Roll six out of eight semesters; and (4) although there were references in the pre-December 1992

[6]    The same would undoubtedly be true of plaintiff's mental arithmetic deficiencies, but the district court did not mention those in it merits decision.

medical records to plaintiff's crying or being on the verge of crying, when the ALJ asked plaintiff about her tears during the hearing she said she had a runny nose and watery eyes due to allergies.

Based on our review of the record, we conclude that the Commissioner's arguments do not establish that his position was substantially justified. First, the law does not require that plaintiff's mental and emotional impairments be disabling to warrant inclusion in the ALJ's hypothetical questions to the VE; it requires only that they be severe, i.e., significantly limit her ability to do basic work activities. See 20 C.F.R. § 404.1520(c) (defining a severe impairment); Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." (quotation omitted)); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (noting "established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

Second, plaintiff's failure to complain of mental or emotional problems or to seek treatment for them is entirely consistent with Dr. Whitten's assessment. Dr. Whitten reported: "What I think are diagnosable amounts of personality disorder are outside of her conscious awareness." (II Appellant's App. at 324.) He also stated that plaintiff was poorly in touch with her own needs and feelings

and that she would "tend to deny any psychological basis for her problems." ( Id. at 326.)

Third, plaintiff's college attendance and performance are not inconsistent with Dr. Whitten's report. Plaintiff testified that she began studying for her associate degree in the spring of 1988, and the evidence shows that she obtained her degree in May of 1992. It took her approximately four years to complete the two-year course for an associate degree even though that was the only activity in which she was engaged. She told Dr. Whitten that "she had to study for hours to make good grades on the college courses most of which had to do with computer operation or typing," and she testified at the hearing that she worked very hard in school, studying late into the night and on weekends. ( Id. at 323.) These facts are all consistent with Dr. Whitten's opinion that plaintiff is "possibly significantly limited in reading and reading comprehension and tries to compensate for limitations with excessive amounts of work." ( Id. at 326.)

Finally, plaintiff's attempt to explain away her tears at the hearing as being due largely to allergies is also consistent with Dr. Whitten's observations about her tendency to "deny all upsetting emotions." ( Id. at 323.) Moreover, her explanation that she was merely suffering from allergies is belied by other physicians' reports that she was crying or on the verge thereof.

In his brief regarding the application for fees, the Commissioner argues the district court failed to mention that Dr. Whitten did not examine plaintiff until more than two years after the expiration of her insured status and that his report made no attempt to provide a retrospective diagnosis. While those two facts are true, there is no indication that the district court ignored them. Moreover, those facts neither undermine the district court's rationale in reversing the denial of benefits nor establish substantial justification for the Commissioner's position.

We conclude the Commissioner failed to demonstrate a reasonable basis in fact or law for the ALJ's failure to include plaintiff's mental and emotional impairments in his questions to the VE, particularly plaintiff's limited reading and comprehension abilities. The district court therefore erred in denying plaintiff's application for fees under the EAJA.

Plaintiff sought fees for 43.3 hours of work at a rate of $137.50 per hour, an amount to which the Commissioner objected. Because the district court denied the fee request in its entirety, it did not consider the reasonableness of either the number of hours claimed or the hourly rate sought by plaintiff. We conclude that these determinations are best made by the district court in the first instance. Accordingly, we remand to the district court to calculate the appropriate fee award.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-11-