**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALVIN A. GROGAN,

       Plaintiff-Appellant,

v.

No. 04-6022

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

       Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV-815-R)**

---

Submitted on the briefs:

Gayle L. Troutman of Troutman & Troutman, P.C., Tulsa, Oklahoma, for
Plaintiff-Appellant.

Robert G. McCampbell, United States Attorney; Tina M. Waddell, Regional Chief
Counsel; Michael McGaughran, Deputy Regional Chief Counsel; Virginia
Watson, Assistant Regional Counsel, Office of the General Counsel, Region VI,
Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

Before **LUCERO** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

**McKAY** , Circuit Judge.

Petitioner Alvin A. Grogan appeals from an order of the district court affirming the Commissioner's decision to deny his application for Social Security disability. Grogan had only a small window of time during which he was insured under the Social Security system, and the Commissioner maintains that most of Grogan's evidence regarding disability fell outside of that window. Grogan does not challenge that this is the appropriate window, but argues that his disabilities sufficiently manifest themselves within the window to qualify him for benefits. We have jurisdiction over this appeal under 42 U.S.C. § 405(g) and 42 U.S.C. § 1291. Because the agency was required to consider evidence of Grogan's disabilities if they manifested themselves inside his insurance window, and because Grogan properly presented evidence, which the agency failed to consider, that his slipped vertebra and his mental impairments manifested themselves as disabilities before the end of his window, we reverse and remand for the Commissioner to re-evaluate the award of benefits to Grogan. [1]

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

*Background*

The procedural history of this case is unusual, and we document it here to note how long—and how many times—Grogan's case for social security benefits has been under consideration by the agency. Grogan filed his first application for disability benefits on October 2, 1992, alleging that he had become disabled due to a spinal condition, a stroke, a heart condition, and high blood pressure as of March 1, 1990. On November 18, 1992, that claim was denied, and Grogan did not pursue it.

Grogan filed his second claim for disability benefits on December 19, 1994, again alleging that he had become disabled on March 1, 1990. His claim was denied by the agency initially, and on reconsideration, because the agency contended both that Grogan's income was too high and that he had withdrawn his application. Grogan requested a hearing and that the agency consider his medical and financial records from the Veterans' Administration. On September 19, 1996, an Administrate Law Judge (ALJ) rejected Grogan's renewed application for benefits because he found that Grogan had not established good cause to reopen his case.

Grogan filed his third application for disability benefits on December 8, 1997, alleging, as had his previous two applications, that he had become disabled on March 1, 1990. On January 12, 1999, an ALJ found that Grogan had presented

no new and material evidence of disability to reopen his case beyond the 1994 application that had already been denied. Grogan filed a request for review, won reconsideration on appeal, and the case was remanded to an ALJ for specific determination whether Grogan had been disabled during the critical period from March 1, 1990, until his social security insurance expired on March 31, 1991.

On August 31, 2001, an ALJ held a hearing on this issue. Grogan was represented by counsel, and he appeared to testify; Harold Goldman, M.D., appeared as a medical expert; and a vocational expert was available had the ALJ decided that his opinion had been necessary. In his original application, Grogan had alleged that he was disabled due to a spinal condition, a stroke, a heart condition, and high blood pressure as of March 1, 1990. Disability was defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905.

In a decision dated September 25, 2001, the ALJ determined that Grogan was not disabled because, in the window that could be considered, Grogan had only an impairment in his back, and his impairment had not been severe. To be severe, an impairment must "significantly limit an individual's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. The ALJ's decision

did not treat Grogan's testimony at his hearing in much depth, nor did it engage Grogan's argument that, on the basis of the same medical evidence, the Veterans' Administration had found him to be significantly disabled from a slipped vertebra before the end of his insurance window with the Social Security Administration. The ALJ opined that Grogan's limited ability to function during 1990-91 was due to his illegal drug use, and the ALJ dismissed Grogan's application for benefits at step two of the five-step process. The Appeals Council affirmed, and the ALJ's decision became the final decision of the Commissioner.

*Standard of Review and Analysis*

Although the agency's decision not to reopen a claimant's application for benefits is discretionary and therefore not subject to judicial review under § 405(g), *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990), once the agency reopens an application for benefits, it assumes the responsibility to adjudicate a claimant's case properly. *See Byam v. Barnhart*, 336 F.3d 172, 180-81 (2d Cir. 2003) (recognizing jurisdiction to review the Commissioner's procedure after the agency reopens an application for benefits); *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (same); *Hereden v. Apfel*, 185 F.3d 874 (Table), 1999 WL 401711, **4 (10th Cir. June 18, 1999) (unpublished decision) (reversing and remanding the Commissioner's decision after reopening). Grogan's disability insurance expired on March 31, 1991, but he would be

entitled to social security benefits if he demonstrated that he became disabled before that date. 20 C.F.R. § 404.130.

An ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 & n.2. At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that he has a medically severe impairment or combination of impairments;" at step three that the impairment is equivalent to a listed impairment; and, at step four, "that the impairment or combination of impairments prevents him from performing his past work." *Id.* at 750-52. If the claimant successfully meets his burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience. *See id.* at 751 & n.2.

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F. 2d 1371, 1374 (10th Cir. 1992). Moreover, "all the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999), and he must consider all relevant medical evidence in making those findings, *Baker v. Bowen*, 886 F. 2d 289, 291 (10th Cir. 1989). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F. 3d 1007, 1010 (10th Cir. 1996). Although we do not reweigh the evidence or try the issues de novo, *Sisco v. United States Dep't of Health and Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993), we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Grogan makes three arguments for reversal in his brief. He argues that the ALJ erred because (1) he did not find that Grogan's alleged radiculopathy[2] was

---

[2]     Radiculopathy is also known as a "pinched nerve." *See, e.g.* , Cervical Radiculopathy (Pinched Nerve in Neck),     *at*

(continued...)

severe before the insurance window closed; (2) the ALJ failed to recognize that the VA had found Grogan to be significantly disabled from the time that Grogan entered the hospital on March 25, 1991; and (3) the ALJ did not properly weigh the medical expert's testimony and other evidence that Grogan was manifesting symptoms of serious post-traumatic stress disorder before the end of the insurance window in 1991. We agree with Grogan's last two arguments, and we reverse and remand for reconsideration of that evidence.

Initially, we address Grogan's first argument that the ALJ erred because he did not find that Grogan's radiculopathy was severe before the insurance window closed. Grogan's argument fails here because the evidence he cites documenting his radiculopathy as particularly severe appeared after the window in which Grogan was insured. The ALJ acknowledged that Grogan had a possible diagnosis of radiculopathy before he was discharged from the hospital in March 1991, but noted that, at the time, doctors had opined that Grogan was able to work. We examine Grogan's second and third arguments more closely.

---

[2](...continued)
http://www.emedx.com/emedx/diagnosis_information/shoulder_disorders/cervical
_radiculopathy_outline.htm; *accord* Radiculopathy, *at*
http://www.back.com/symptoms-radiculopathy.html ("Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots.").

*a.  The VA's Assessment*

Grogan's second argument, that it was reversible error for the ALJ to have failed to recognize that the VA had found Grogan to be seriously disabled from his slipped vertebra from the time that Grogan entered the hospital on March 25, 1991, has merit.  The date of Grogan's admission to the hospital was before his Social Security window closed on March 31, 1991.  The VA found Grogan to be 100 percent disabled for a month and a half after he entered the hospital, and permanently disabled at sixty percent thereafter.

Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive.  *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.") (quotation omitted); *see also* 20 C.F.R. § 416.912(b)(5) (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration).

On appeal, the district court attempted to read into the ALJ's omission that the Commissioner was not concerned about the VA's evaluation because the term of the 100 percent disability was for less than one year, and because Grogan's level of permanent disability thereafter was merely sixty percent.  We, however,

recognize two problems with this approach. First, the district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. *See, e.g.*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Second, although a severe impairment must "significantly limit an individual's physical or mental ability to do basic work activities," 20 C.F.R. § 404.1521, we have held that this is a "de minimus" showing at step two of the five-step process. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

We therefore hold that the ALJ's failure to discuss the significance of the VA's disability evaluation in concluding that Grogan had not met the "de minimus" required showing of a severe impairment at step two was reversible error. *See Clifton*, 79 F.3d at 1010; *Washington*, 37 F.3d at 1440.

b.    *Mental Impairment*

Grogan's third argument that it was reversible error for the ALJ not to have properly weighed the medical expert's testimony and other evidence that Grogan was manifesting symptoms of serious post-traumatic stress disorder before the end of his insurance window in 1991 also has merit. Grogan was formally admitted to

the VA's post-traumatic stress disorder treatment program in August 1993. The ALJ dismissed earlier evidence of mental illness by noting that Grogan was confused about dates and events; he dismissed the independent medical expert's conclusion that Grogan had been suffering from mental impairments during his insurance window on the ground that the medical expert had relied on Grogan's self-reporting; and the ALJ held that any remaining damage to Grogan's mental health was due to petitioner's history of drug and alcohol abuse. Accordingly, the ALJ found Grogan to have had no mental impairment at all.

First, however, if Grogan had a mental impairment that had manifested itself as a disability before the end of his insurance window—even if that mental impairment was diagnosed after the window had closed, the Commissioner is responsible for covering the impairment. *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000); *Culler v. Massanari*, 9 Fed. Appx. 839, 842-44 (10th Cir. May 22, 2001) (holding that, because claimant's mental impairment might have manifested itself before she was no longer insured, the ALJ should have included the mental impairment in his evaluation of disability) (unpublished decision).

Second, although Grogan did not assert in his application for disability that he suffered from a mental impairment during his insurance window, it is an issue that was apparent from the record, and that the ALJ chose to address. Generally, the burden to prove disability in a social security case is on the claimant, *Bowen*

*v. Yuckert*, 482 U.S. 137, 146 (1987), but a social security disability hearing is nonadversarial, and thus the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised" in that hearing. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). When he considers an issue, an ALJ "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

Third, although the ALJ asked Dr. Goldman, an impartial medical expert, to report on Grogan's psychological condition during the window in which Grogan was insured, the ALJ briefly dismissed Dr. Goldman's conclusions and the evidence upon which they were based because the ALJ failed to recognize and treat much of that evidence. Dr. Goldman concluded that, from March 1990 to March 1991, Grogan had displayed disability-level symptoms of depressive syndrome, post-traumatic stress disorder, as well as a self-destructive personality disorder. Apt. App., Vol. II at 61-62; *accord* Post-Hearing Psychiatric Review, *id.* at 541-54. If the evidence upon which an evaluation is based is found to be credible, an ALJ must explain why he chooses not to accept a medical expert's diagnosis. *Baker*, 886 F. 2d at 291.

We defer to the judgment of the Commissioner when her decisions are supported by substantial evidence, but there is a specific two-step procedure that the Commissioner must follow when determining whether a claimant has a mental impairment. The Commissioner "must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's ability to function under 20 C.F.R. § 404.1520a(b)(2), *et seq.*

Additionally, when an ALJ finds evidence of a drug or alcohol problem, the ALJ may only deny benefits if the claimant's drug addiction or alcoholism is a contributing factor material to the determination of the claimant's disability. 20 C.F.R. § 416.935. A drug or alcohol addiction is a contributing factor if the claimant's remaining limitations would not be disabling in the absence of drugs or alcohol. *Id.* But, according to the regulations, if his remaining limitations would remain disabling, the claimant must be found disabled regardless of drug addiction or alcoholism. *Id.*

In the body of his decision, the ALJ noted that Grogan was "having weird thoughts and it was difficult to concentrate." Aplt. App., Vol. II at 21. The ALJ observed that Grogan had difficulty remembering dates. Yet the ALJ discussed only a mental status examination taken at the time Grogan came to the emergency

room after a car accident in March 1991 for evidence that Grogan's baseline psychiatric functioning was normal. That post-accident report noted that Grogan was "calm, cooperative, alert and oriented"—but that description was presumably an alternative to unconscious, in a coma, or disoriented as other victims of car accidents might be. *Id.* at 283. Because the emergency-room examination was never a significant psychiatric evaluation, it had no bearing on the depth of Grogan's long-term mental impairments.

Next, the ALJ pronounced that the "record is absent any further documentation during the relevant period between March 1, 1990 and March 31, 1991." *Id.* at 21. However, as described below, this is simply not true.

Finally, the ALJ held that Grogan was "only limited by drug and alcohol abuse," *id.*, and that Dr. Goldman's conclusions could be dismissed because they were based "on the claimant's testimony rather than the medical evidence in the record." *Id.* at 22.

The transcript of the hearing itself, however, belies the ALJ's characterization of the evidence in this record regarding mental impairment. Grogan did report that he left his job at H&R Block in 1990 because it was the end of tax season and because he was "having a hard time concentrating and doing my job." *Id.* at 40. He was having "weird thoughts" that were "coming from my head." *Id.* But soon afterwards Grogan went into a deep state of

depression, attempted suicide several times, and got in trouble with the law for discharging a firearm. He was actively being treated during 1990 for mental problems at the VA's Oklahoma City post-traumatic stress department.

This evidence comports with a letter from a therapist that Grogan was being treated for mental problems from 1989 through 1993, and with Grogan's assertion that he had been sporadically incarcerated in a psychiatric ward for weeks at a time. *Id.* at 55, 61, 64-65; *accord id.* at 537. Additionally, Grogan proffered a long list of psychotropic drugs that he had been prescribed in 1990 and 1991. Trazodone[3] gave him hallucinations, which he described as "spiders." *Id.* at 51. Even before 1989, Grogan had been discharged from the Army in 1972 for "inability to cope" with duty in Vietnam. *Id.* at 54.

When Grogan used illegal drugs, he stopped taking the medicines that the VA gave him, or he would mix the medicines and the drugs together for potent highs. Yet he reduced the number of street drugs he was taking around Thanksgiving and Christmas of 1990 through the first part of 1991, and, when Grogan returned to the center in 1993, the VA entered him into a six-week day course. There the VA formally diagnosed him with post-traumatic stress disorder,

---

[3]     Trazodone is a mood elevating drug specially designed to treat depression. *See* Nat'l Inst. of Health, Medline Entry for Trazodone, http://www.nlm.nih.gov/ medlineplus/druginfo/medmaster/a681038.html.

and sent Grogan to a four-month in-house treatment program for that disorder in Topeka, Kansas.

Also, although evidence of Grogan's three mental impairments was intertwined at the hearing, Grogan testified that his depression had always been separate from the drugs and alcohol. In 1990-91, he had been deeply depressed, and had nightmares—two or three per night. Because of the nightmares, Grogan was able to sleep only two to two-and-a-half hours a night. Prescription drugs helped, but he still had "wild dreams." *Id.* at 50. He was unable to concentrate enough to watch television or to read a book. Grogan's description of regularly "bunkering up" was graphic. He would

> go in the bedroom and close all the windows and turn out all the lights. Unplug the phone and lock the door and holler, don't bother me. Or I could go out in the woods or, you know, to the lake or something and you know, the noise gets too much and all the activity going on and it just starts confusing me and can't think and I'll walk out in the woods and . . . I'd scream real loud, like that.

*Id.* at 51-52.

The ALJ's failure to acknowledge any of this evidence in his decision before dismissing Grogan's claim at step two is failure to support his decision with substantial evidence.

Specifically, the Commissioner committed reversible error on several levels. First, the Commissioner had the general burden, in addition to discussing

the evidence supporting her decision, to "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton*, 79 F.3d at 1010. Second, the ALJ's decision acknowledged none of the details of Grogan's testimony about his treatment for mental illness, and therefore failed to evaluate Grogan's "pertinent symptoms, signs, and laboratory findings to determine whether [he had] medically determinable mental impairment(s)" as required when evaluating evidence of mental illness. 20 C.F.R. § 404.1520a(b)(1).

Third, although the ALJ opined that Grogan's limited ability to function during 1990-91 was due to his illegal drug use, he failed to follow the prescribed method for considering whether Grogan's drug use could be considered a contributing factor to his disability. *Williams*, 844 F.2d at 750 ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citation omitted)). To dismiss an application on the basis that Grogan's drug addiction was a contributing factor material to the determination his disability, the ALJ had to find that, if Grogan had stopped using drugs or alcohol, he would not have been disabled. 20 C.F.R. § 416.935. Grogan's testimony, however, indicated that he remained mentally ill even after he reduced the number of street drugs he was taking around Thanksgiving and Christmas of

-17-

1990 through the first part of 1991, and that his depression had always been separate from the effects of drugs or alcohol.

Finally, because the ALJ failed to address the medical evidence that did support Grogan's testimony, particularly the letter from a therapist that Grogan was being treated for mental problems from 1989 through 1993, he could not dismiss Grogan's testimony in whole as not credible. *Clifton*, 79 F. 3d at 1010. Furthermore, if the ALJ could not dismiss Grogan's testimony as not credible, he could not dismiss Dr. Goldman's conclusions as not credible merely because Dr. Goldman's diagnosis was based on Grogan's testimony. Dr. Goldman opined that, from March 1990 to March 1991, Grogan had displayed disability-level symptoms of depressive syndrome, post-traumatic stress disorder, as well as a self-destructive personality disorder. The doctor's medical diagnosis must thus be accorded more weight. *Baker*, 886 F. 2d at 291.

*Conclusion*

Because the Commissioner's decision was not supported by substantial evidence, we REVERSE and REMAND Grogan's benefits application for further consideration in accordance with the evidence and procedures discussed in this decision.