**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TOMMY D. SEEVER,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

       Defendant-Appellee.

No. 05-5218
(D.C. No. 04-CV-632-J)
(N. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

This is an appeal from a district court judgment affirming the Social

Security Commissioner's denial of disability benefits. Plaintiff-Appellant Tommy

Seever argues that the administrative law judge (ALJ) failed to discuss certain

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

medical evidence and include various restrictions in his Residual Functional

Capacity (RFC) determination.  We affirm.

## Background

Seever worked as construction carpenter.  In 1998, while carrying a large

pipe with a co-worker, Seever sustained a "severe jolting injury to his neck and

back" when the co-worker dropped his end of the pipe.  Aplt. App. at 289.  Seever

was subsequently diagnosed with multiple cervical and lumbar disc herniations,

radiculopathy, bone spurs, cervical spondylosis, and severe degenerative disc

disease.  Seever underwent seven operations to correct the problems.

On April 2, 2002, two months after his last operation, surgeon Mark Hayes

opined that Seever

> is doing really well . . . and he is ready to be release[d] to return to
> work.  He is going to work back as a carpenter.
>       . . . [H]e said he was feeling a whole lot better.  He still has
> some pain and he is learning how to live with it.

Aplt. App. at 310.  But three weeks later, Seever reported to Richard Hastings,

D.O., during a workers' compensation evaluation, that he was experiencing

intense pain and was unable to perform carpentry work for a full day.

Dr. Hastings reviewed Seever's medical history, conducted a physical

examination, and found that Seever, "whose entire adult work activities have been

that of heavy manual labor[,] is currently 100% permanently totally disabled and

economically unemployable." *Id*. at 300.  Dr. Hastings attributed Seever's total

disability to a 49% impairment due to lumbar injury, 47% impairment due to cervical injury, and 3% impairment "due to psychological overlay and clinical depression." *Id.* at 300. But despite those findings, Dr. Hastings recommended that Seever undergo a "full functional capacity evaluation" and thereafter be assessed by a "vocational rehabilitative training specialist . . . to determine whether or not there are any job activities that [Seever] could reasonably be expected to perform." *Id.* at 301.

In June 2002, Seever applied for disability benefits. A psychiatric consultant reviewed Seever's file and concluded that "depression [secondary to] chronic pain," *id.* at 355, only mildly limited Seever's daily activities, social functioning, and "[c]oncentration, [p]ersistence, or [p]ace," *id.* at 353. And one of Seever's orthopedic physicians, Jeff Gibson, D.O., submitted a mental status form, opining that Seever's "problems appear to be physical," and that he should be able to complete tasks as instructed and "respond well to supervision." *Id.* at 303. Seever's application was denied initially and upon reconsideration. Seever requested a hearing before an ALJ.

On October 1, 2003, Seever was interviewed and tested by clinical psychologist John Hickman. In a disability evaluation report, Dr. Hickman indicated that Seever described "a severe degree of anxiety and depression," *id.* at 371, which was consistent with certain test results. And although Seever's score on the Minnesota Multiphasic Personality Inventory-2 was shared by individuals

who "are severely and chronically maladjusted," Seever's score also indicated that he "was presenting himself in a negative light and may have been over reporting his difficulties." *Id.* Dr. Hickman concluded that "the stress of [Seever's] cervical and lumbar surgery and residual pain and physical limitations have taxed his psychological coping abilities but have yet to disrupt his cognitive functioning." *Id.* at 372. Two days later, Dr. Hickman filled-out a medical source statement form, opining that Seever was only slightly limited in his abilities to understand, remember, and carry-out detailed instructions, and was not impaired at all in his abilities to understand, remember, and carry-out short, simple instructions or to "make judgements on simple work-related decisions." *Id.* at 374. Dr. Hickman also concluded that, while Seever was moderately limited in his abilities to appropriately interact with co-workers and respond to work pressures, Seever was only slightly limited in his abilities to respond to changes in a work setting and to appropriately interact with supervisors and the public. Finally, Dr. Hickman checked a box indicating that no other capabilities were affected by Seever's impairment.

At the disability hearing, the ALJ asked the vocational expert (VE) what jobs were available to a hypothetical claimant with Seever's skills and physical limitations, including moderate limitations in his abilities to appropriately interact with co-workers and respond to work pressures. The VE identified picture

framer, wood heel attacher, ticket seller, and call-out operator as examples of suitable jobs.

In his written decision denying benefits, the ALJ found that Seever had the RFC to perform light work "where there is no direct contact . . . with co-workers." *Id.* at 20A. The ALJ further found that while such an RFC precluded Seever from returning to his past relevant work as a carpenter, there were at least four types of jobs in the national economy that he could perform: picture framer; heel attacher; ticket seller; and call-out operator. After the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, Seever sought relief in the United States District Court. Unsuccessful, Seever filed this appeal.

## Analysis

### I. Standards of Administrative Procedure & Judicial Review

Disability insurance benefits are available to qualified individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, an ALJ must follow a five-step sequential evaluation process. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

At step one, the claimant must show that he is not presently engaged in substantial gainful activity; at step two that he has a medically severe impairment or combination of impairments; at step three that the impairment is equivalent to a listed impairment; and, at step four, that the impairment or combination of impairments prevents him from performing his past work. If the claimant successfully meets his burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given his age, education, and work experience.

*Id.* (citation and quotations omitted).

We review the ALJ's decision only to determine whether the correct legal standards were applied and whether substantial evidence supports the factual findings. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Evidence is not substantial, however, if it is overwhelmed by other evidence in the record or if it is a mere scintilla. *Id.; Grogan*, 399 F.3d at 1261-62. "Although we do not reweigh the evidence or try the issues de novo, we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted).

## II.  RFC

### A.  The ALJ's Evidentiary Discussion

Seever argues that the ALJ considered only portions of Dr. Hickman's opinion and none of Dr. Hastings' opinion in determining RFC.  Regarding Dr. Hickman, Seever claims that the ALJ ignored the doctor's medical source statement that Seever was (1) moderately limited in his abilities to appropriately interact with co-workers and respond to work pressures; and (2) slightly limited in his abilities to appropriately interact with the public and supervisors, respond to work changes, and to understand, remember and carry-out detailed instructions.  An ALJ is not, however, required to discuss every piece of evidence.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004).  Rather, an ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects.  *Id.*

Here, the ALJ wrote only one restriction into Seever's RFC to account for his mental limitations:  no direct contact with co-workers.  Although the ALJ did not specifically cite Dr. Hickman's medical source statement as being responsible for this restriction, the ALJ did mention the medical source statement during the administrative hearing.  Further, Seever does not suggest how the restriction fails to suit his moderately limited ability to interact appropriately with co-workers.  Indeed, as the medical source statement indicates, an individual with a "moderate" limitation "is still able to function satisfactorily."  Aplt. App. at 374.

We conclude that the ALJ's restriction on co-worker contact is supported by substantial evidence and that the ALJ's failure to attribute the restriction to Dr. Hickman's medical source statement was not error.

As for Seever's ability to handle work pressures, we note that during the disability hearing, the ALJ asked the VE to consider a moderately limited ability to interact with co-workers *and* to handle work pressures in determining what jobs Seever could perform in the national economy. *Id.* at 421-22. The VE listed picture framer, wood heel attacher, ticket seller, and call out operator—the same jobs that the ALJ listed in his decision as being available to Seever. Consequently, the ALJ's failure to discuss in his written decision Dr. Hickman's work-pressures opinion was at most harmless error. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (recognizing that harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (quotation omitted)).[1]

Regarding Dr. Hickman's opinion that Seever is slightly limited in his abilities to interact with the public and supervisors, process detailed instructions,

---

[1] Seever argues that harmless error analysis cannot be invoked because the Commissioner did not argue it below. But we may employ that analysis for the first time where, as here, the record is not overly long or complex, harmlessness is not debatable, and reversal would result in futile and costly proceedings. *See Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006); *see also Jenkins v. Nelson*, 157 F.3d 485, 494 n.1 (7th Cir. 1998).

and respond to work changes, Seever has not suggested how those limitations are sufficiently probative of RFC as to merit discussion by the ALJ. "Slight" limitations are defined on the medical source statement as "mild," meaning that "the individual can generally function well." Aplt. App. at 374. This is partly consistent with Dr. Gibson's opinion on the mental status form, which the ALJ did mention, that Seever "should respond well to supervision" and could complete tasks within his abilities. *Id.* at 303. We conclude that the ALJ's failure to discuss Dr. Hickman's opinion on slight limitations was not error.

Seever also notes that the ALJ did not mention Dr. Hickman's observation in the disability evaluation report that Seever's personality test score was shared by individuals who "are severely and chronically maladjusted." *Id.* at 371. But the probative value of that test score is unclear, given Dr. Hickman's further observation that Seever "was presenting himself in a negative light and may have been over reporting his difficulties." *Id.* Moreover, Dr. Hickman prepared the report either prior to, or contemporaneous with, his medical source statement, and was undoubtedly aware of the test score and possible "over reporting" when setting Seever's limitations in the medical source statement. Although Dr. Hickman could have transferred Seever's test score onto the medical source statement form as a "marked" or "extreme" limitation, indicating a severe or complete functional impediment, id. at 374, he did not. Instead, he set Seever's mental limitations at only slight and moderate levels, indicating an ability to

function at least satisfactorily. We will not fault the ALJ for failing to discuss a

test score that Dr. Hickman—the administering physician—questioned and

implicitly concluded would not prevent Seever from functioning satisfactorily.

Seever also argues that the ALJ erred in not mentioning Dr. Hastings'

workers' compensation evaluation. Again, we discern no reversible error.

Dr. Hastings' "totally disabled" finding was limited to whether Seever could

resume heavy manual labor, such as carpentry. The ALJ's decision at step four,

that Seever was unable to perform any past relevant work, mirrors Dr. Hastings'

conclusion.[2] Moreover, whether a social security claimant is disabled is an issue

reserved to the Commissioner. 20 C.F.R. § 416.927(e).

## B. The ALJ's RFC Determination

Seever contends that "the evidence in this case convincingly establishes

that the ALJ should have included a restriction relating to Mr. Seever's at least

moderate limitations in dealing with work pressures in a normal work setting

and/or some restriction relating to his limited learning, memory, and

concentration capabilities." Aplt's Br. at 40. As noted above, the ALJ included a

---

[2]    Additionally, Seever argues that two of Dr. Hastings' findings "seem to conflict with a finding that Mr. Seever could perform the significant standing and walking required by light work." Aplt's Br. at 31. We do not reach this argument because it is conclusory, and it appears to be offered regarding Seever's reliance on unpublished authority, rather than the ALJ's discussion of the relevant medical evidence. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (stating that "perfunctory complaints," not adequately framed or developed, are insufficient to invoke appellate review).

work-pressures restriction in his hypothetical to the VE, who listed the same jobs that the ALJ ultimately derived at step five. Thus, the ALJ's failure to include the restriction as part of his written RFC determination was harmless.

As for Seever's mental capabilities, the ALJ cited Dr. Hickman's disability evaluation report and found that "his attention span, concentration and memory were intact." Aplt. App. at 16. This is an accurate summation of Dr. Hickman's observations in the section entitled "Attention, Concentration, and Memory," *id.* at 370, and correlates with Dr. Hickman's opinion that Seever demonstrated "normal cognitive skills," *id.* at 372. The ALJ also found that Seever's depression caused only mild difficulties in maintaining concentration, persistence or pace, and mild difficulties in daily activities, but moderate difficulties in social functioning. This is consistent with Dr. Hickman's medical source statement, the psychiatric consultant's review form, and Dr. Gibson's mental status form.

Nevertheless, Seever maintains that some restriction should have been imposed because of (1) the symptoms he reported to Dr. Hickman, (2) the results of Dr. Hickman's tests showing severe anxiety and depression, "seventh grade level scores in spelling and math, several low scores during memory testing . . . [and] either marked or borderline learning disabilities," Aplt's Br. at 42, and (3) Dr. Hickman's observation that Seever's surgeries, residual pain, and physical limitations "have taxed his psychological coping abilities," Aplt. App. at 372. But Dr. Hickman interpreted this information as presenting no more than a slight

impairment—meaning that he could still function well—as to understanding, remembering, and carrying out detailed instructions, and he declined to identify any other mental capabilities affected by Seever's depression. We will not fault the ALJ for failing to interpret Seever's symptoms and test results differently than Dr. Hickman. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (observing that an ALJ may not substitute his lay opinion for a medical opinion); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992) (recognizing that this court may not reweigh evidence).

Nor are we convinced that the ALJ should have included in the RFC a mental capabilities restriction because Seever "called Dr. Hayes's office in tears [in November 2000] due to his level of pain and delay in obtaining surgical treatment," Aplt's Br. at 40, was "placed on two different antidepressant medications" in 2001, *id.*, and was diagnosed by Dr. Hastings with a "3% permanent impairment . . . due to psychological overlay and clinical depression," Aplt. App. at 300. Substantial evidence supports the ALJ's decision to not place a learning, memory, and concentration restriction in Seever's RFC.

The judgment of the district court is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge

-12-