**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN V. BRENEISER, JR.,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 06-2284
(D.C. No. CIV-05-431 LAM)
(D. N.M.)

**ORDER AND JUDGMENT**[**]

Before **BRISCOE**, **McKAY**, and **GORSUCH**, Circuit Judges.

Plaintiff John V. Breneiser, Jr. appeals the district court's order upholding

the Commissioner's denial of his application for social security disability

benefits. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C.

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this appeal.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1291.  We affirm in part, reverse in part, and remand for further proceedings before the agency.

## I. Background

Mr. Breneiser claimed disability since December 10, 2002, due to post-traumatic stress disorder (PTSD), hypertension, and osteoarthritis.  Due to his PTSD, he isolated himself from others because he could not tolerate being around people and he got angry easily.  He lived with his mother, spending many hours each day in his room, sometimes staying in his room all day.  His past work was as a night security guard, which permitted him to work alone and avoid people for the most part.  He testified that a security guard will occasionally confront someone, and he was afraid he would punch someone and go to jail, leaving his aged mother without anyone to take care of her.  He changed jobs every couple of years because he became angry at his supervisor and quit.

Dr. Gzakow, a consulting psychologist, noted that Mr. Breneiser had a difficult time relating to others and could not withstand work stress, but that he could follow directions and do simple tasks.  Two state agency physicians, Drs. Blacharch and Walker, reviewed Mr. Breneiser's records and opined that he had mild or moderate limitations in various areas of functioning, especially social functioning.  An evaluation by the Veterans Administration (VA) resulted in a 70% service-related disability and a 100% overall unemployability rating based on his PTSD.  Accordingly, he was granted VA benefits.  He participated in a VA study

for treatment of PTSD overseen by Dr. Hollifield in which he received acupuncture treatments.

In the agency proceedings, an administrative law judge (ALJ) held a hearing at which Mr. Breneiser and a vocational expert (VE) testified. The ALJ determined that Mr. Breneiser could perform his past relevant work (PRW) as a security guard, thus concluding at step four the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process). The Appeals Council denied review, so the ALJ's decision constitutes the final agency decision. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). The district court affirmed.

On appeal to this court, Mr. Breneiser asserts that the ALJ erred in determining that he retained the mental residual functional capacity (RFC) to perform his PRW. He also argues that substantial evidence does not support the ALJ's finding that he could perform his PRW. We agree with Mr. Breneiser that the ALJ's conclusion that his vision was adequate for work as a security guard is not supported by substantial evidence, and we remand on this issue. We uphold the Commissioner's determination on the remaining issues.

## II. Standards of Review

We review the Commissioner's decision to ascertain whether it is supported by substantial evidence and to evaluate whether he applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We do not reweigh the evidence or retry the case, but we "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262.

### III. Discussion

### (A) Vision

Mr. Breneiser presented evidence indicating that his vision was inadequate to perform the duties of a security guard. The VE identified section 372.667-034 of the Dictionary of Occupational Titles (DOT) as the appropriate description of Mr. Breneiser's PRW. The job's vision requirements are "frequently" for field of vision and far acuity, and "occasionally" for near acuity, depth perception, accommodation, and color vision. DOT § 372.667-034.

Records from Dr. Saxon, an optometrist, indicate that Mr. Breneiser's eyes had sustained scarring "causing decreased acuity," among other conditions, and Dr. Saxon directed him to change from contact lenses to glasses to avoid further damage to his eyes. R. Vol. II, at 200. The evidence concerning whether his vision could be corrected was unclear. *See id.* at 273. Mr. Breneiser testified that he could not tolerate the glasses he was prescribed because he could not see with them, particularly for depth perception, and that he could not see well at night so he could not work as a night security guard. *Id.* at 261-62. Although the VE stated that the

-4-

vision necessary for security-guard work was similar to that necessary to obtain a driver's license, *id.* at 274, Mr. Breneiser testified that he feared he could not again pass the vision test for a driver's license, *id.* at 265. Therefore, the ALJ should have resolved the evidence concerning Mr. Breneiser's vision problems before concluding that he could perform his PRW as a security guard. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (discussing three phases of step four, which ultimately require ALJ to determine if claimant has ability to meet job demands of his PRW despite the presence of mental and/or physical limitations). We recognize that the district court filled in the analysis on this point, but the court's post-hoc rationalizations are insufficient. *Grogan*, 399 F.3d at 1263. Therefore, because the ALJ did not resolve the evidence relating to Mr. Breneiser's vision and the vision requirements for a security guard, we conclude that substantial evidence does not support the ALJ's determination that Mr. Breneiser could perform his PRW.

## (B) Social Functioning

Mr. Breneiser claims that the ALJ's mental RFC determination was flawed because it did not include the limitations found by Drs. Blacharch and Walker. Each of those consultants indicated in the "social interaction" section of the Mental Residual Functional Capacity Assessment form that Mr. Breneiser was "moderately limited" in "[t]he ability to interact appropriately with the general public."

R. Vol. II, at 139, 166.[1]  However, neither consultant found that Mr. Breneiser's limitations precluded his employment.  Dr. Blacharch opined that he had "some limitations in capacity for sustained concentration and social interactions [and] [s]hould be able to do routine work with limited social contact."  R. Vol. II, at 141. Similarly, Dr. Walker stated that Mr. Breneiser could perform work not requiring "inordinately high levels of concentration demands," and entailing "brief and superficial contact with the general public."  *Id.* at 167.  The ALJ credited the experts' opinions, notwithstanding the limitations they found, that Mr. Breneiser could work, even though "he require[d] work where there is not extensive contact with co-workers, supervisors, and the public."  *Id.* at 17.  Mr. Breneiser contends that the ALJ disregarded critical limitations found by Drs. Blacharch and Walker and that he erred in adopting the doctors' conclusions about Mr. Breneiser's ability to work.

In a related argument, Mr. Breneiser claims that the ALJ's analysis of his RFC was flawed because the ALJ's hypothetical question to the VE did not include the mental impairments found by Drs. Blacharch and Walker.  In addition, he asserts that the ALJ improperly disregarded the VE's response to his attorney's questions stating that the limitations noted by Drs. Blacharch and Walker would significantly interfere

---

[1]     Dr. Blacharch noted additional moderate limitations in Mr. Breneiser's social-functioning, including his ability to accept instructions, to respond appropriately to his supervisor's criticism, and to get along with coworkers without "exhibiting behavioral extremes."  R. Vol. II, at 139.  Dr. Walker stated that Mr. Breneiser was "not significantly limited" in those areas, but that he was "moderately limited" in "[t]he ability to respond appropriately to changes in the work setting."  *Id.* at 166.

with the ability to work.

The record reflects that the ALJ considered the limitations found by Drs. Blacharch and Walker and incorporated into his RFC determination their opinions that Mr. Breneiser required work involving limited contact with others. We reject Mr. Breneiser's argument that the ALJ erred in considering the doctors' conclusions about his abilities. Although it would have been preferable for the ALJ to explain in greater detail his reasons for determining that Mr. Breneiser could work as a security guard despite the evidence that he would have difficulty responding appropriately to others, the ALJ's treatment of the evidence does not rise to the level of reversible error.

The hypothetical question posed to the VE incorporated the conclusions quoted above from Drs. Blacharch and Walker. *Id.* at 275-76. Therefore, we conclude that the hypothetical posed to the VE was adequate in that it included the limitations "found to exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000).

### (C) VA's Disability Rating

Mr. Breneiser next argues that the ALJ committed reversible error by not giving enough weight to the VA's disability rating and by not discussing the VA's rating more fully. As noted above, the VA determined that Mr. Breneiser's PTSD resulted in a 70% service-related disability and a 100% overall unemployability rating. "Although findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca v. Dep't of Health &*

-7-

*Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (further quotation omitted); *see also* 20 C.F.R. § 404.1512(b)(5) (stating agency will consider "[d]ecisions by any governmental or nongovernmental agency" concerning disability).

There is no dispute that the ALJ considered the VA records and acknowledged the VA's 100% disability rating. He reviewed the VA's reports of Mr. Breneiser's mental and physical symptoms, as well as a psychiatric consultative evaluation from May 2003. R. Vol. II, at 15. Mr. Breneiser argues that the ALJ should have given the VA's rating more weight, but he "has not pointed to any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The ALJ was not required to adopt the VA's conclusion. *See id.* Accordingly, we reject this claim of error.

### (D)  Treating Psychiatrist's Opinion

We turn to Mr. Breneiser's claim that the ALJ failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Hollifield, that he was "markedly impaired in many or most of his social, work, and family responsibilities." R. Vol. II, at 189. "Under the 'treating physician rule,' the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett*, 395 F.3d at 1173. An ALJ may decline to give controlling weight to a treating psychiatrist's opinion, however, if it is not "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," or if it is inconsistent with other substantial evidence. *Id.* at 1174.

Assuming that Dr. Hollifield can be considered a treating psychiatrist, the ALJ

articulated adequate reasons for discounting his opinion: the opinion was

contradictory to all of the other psychiatric evidence and none of the documentation

supporting the opinion was submitted.

## *IV. Conclusion*

The judgment of the district court is AFFIRMED in part, REVERSED in part,

and the matter is REMANDED with directions to remand to the Commissioner for

further proceedings consistent with this order and judgment. While we agree with the

district court's rulings regarding the social functioning and VA disability rating

issues, and its consideration of Dr. Hollifield's opinion, we reverse and remand for

further consideration of whether claimant's vision is adequate to perform his PRW as

a security guard.

<div style="margin-left:50%">

Entered for the Court


Mary Beck Briscoe
Circuit Judge

</div>