**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARILYN HUNTER,

      Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 06-4045
(D.C. No. 2:05-CV-329-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Claimant Marilyn Hunter appeals the district court's order affirming the

Commissioner's decision to deny her application for Supplemental Security

Income (SSI) benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28

U.S.C. § 1291, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Background

Ms. Hunter applied for SSI benefits in June of 2003. At that time, she was forty-eight years old and was being treated for diabetes, degenerative disc disease, neck and back pain, muscle spasms, and sciatica. After a hearing, an administrative law judge (ALJ) determined that Ms. Hunter was not disabled at step five of the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five-step process), because she retained the residual functional capacity (RFC) to perform a significant range of light work that existed in the national economy. The Appeals Council denied review, and the district court affirmed the ALJ's decision. Ms. Hunter subsequently filed this appeal.

Ms. Hunter argues on appeal that (1) the ALJ's decision, in particular its RFC assessment, is not supported by substantial evidence; (2) the ALJ improperly evaluated her treating physician's opinion and in so doing, failed to cite specific reasons for not giving it controlling weight; and (3) the ALJ failed to identify specific evidence supporting its finding that she was not a credible witness. We find each contention lacking in merit and therefore affirm the district court.

## II. Discussion

We review the Commissioner's decision to determine whether it is supported by substantial evidence in the record and to evaluate whether she applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261

(10th Cir. 2005).  In conducting our review, we neither reweigh the evidence nor retry the case, but "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262.

## A. Substantial Evidence and the ALJ's RFC Assessment

Ms. Hunter first contends the ALJ's determination is not supported by substantial evidence.  Our review of the record compels us to conclude otherwise. Ms. Hunter was first diagnosed with diabetes in April 2003, and degenerative disc disease of the lumbar spine the month following.  She also had been suffering from neck and back pain, muscle spasms, and sciatica.  After Ms. Hunter applied for SSI, an agency physician reviewed her medical records and concluded that she was not disabled.  As indicated by the physician's physical capacity assessment, Ms. Hunter was capable of lifting or carrying twenty pounds occasionally and ten pounds frequently.  She could sit, stand, or walk for a total of six hours in an eight hour workday, and was unlimited in her exertional limit to push or pull. The physician indicated that Ms. Hunter could occasionally climb stairs, ramps, ropes, ladders, and scaffolds, as well as occasionally balance, stoop, kneel, crouch, or crawl.  The physician also determined that she was without any manipulative, visual, communicative, or environmental limitations.

Shortly after the agency's initial denial, Ms. Hunter underwent an MRI and full-body bone scan to further evaluate her condition.  The MRI confirmed that

she suffered from degenerative disc disease of the lumbar region of her spine, while the bone scan was "completely within normal limits," App. at 110. With these additional diagnostics, a second agency physician reviewed Ms. Hunter's medical record and again concluded that she was not disabled.

Following the denial of Ms. Hunter's request for reconsideration, she was examined by Dr. Mark Kabins. Consistent with prior diagnoses, Dr. Kabins agreed that Ms. Hunter suffered from a number of impairments, including degenerative disc disease of the lumbar spine. Yet Dr. Kabins also believed that Ms. Hunter suffered from degenerative disc disease of the thoracic region of the spine, and possibly fibromyalgia. Most significantly, though, contrary to the conclusion reached by the agency physicians, Dr. Kabins believed that Ms. Hunter was "disabled from employment, indefinitely." *Id.* at 129. Dr. Kabins based his opinion on the results of this single examination that occurred on December 13, 2003 – the only occasion he examined Ms. Hunter.

Approximately nine months later, in September 2004, Dr. Kabins completed a physical capacity assessment form that differed from that of the agency physicians. Specifically, Dr. Kabins' assessment indicated that Ms. Hunter could frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift twenty pounds, and never lift fifty pounds. He believed she could sit in a regular chair for a total of two hours in an eight-hour work day and a recliner for a total of four hours in an eight-hour work day. Dr. Kabins also

indicated that Ms. Hunter could stand for fifteen minutes at a time for a total of one hour, walk for fifteen minutes at a time for a total of one hour, and lay down for a total of seven hours during an eight-hour work day. He further indicated that she is fully capable of pushing and pulling, fine manipulation, and simple grasping, but should never climb ladders or stairs, nor kneel, stoop, or bend at the waist.

Based on the foregoing evidence, the ALJ concluded that Ms. Hunter possessed the RFC to "perform a significant range of light work." *Id*. at 31. In arriving at this conclusion, the ALJ found that Ms. Hunter could lift and carry twenty pounds occasionally and ten pounds frequently. This finding was consistent with that of both agency physicians. The ALJ further determined, consistent with the findings of the agency physicians, that Ms. Hunter could sit, stand, or walk for two hours at a time for a total of six hours in an eight-hour work day, and that she was unlimited in her ability to push and pull with her upper extremities, aside from her lifting and carrying restrictions. The ALJ's determination that she could occasionally climb stairs and ramps, and was without communicative, visual, or environmental exposure limitations, also coincides with the agency physicians' assessments. Notably, the ALJ's finding that Ms. Hunter should never climb ladders is supported by Dr. Kabins' assessment as well.

In addition to these source opinions, the ALJ's decision is supported by objective diagnostic evidence. Ms. Hunter's MRI and x-rays indicated that she

suffered from degenerative disc disease, while her bone scan was "completely within normal limits," *id.* at 110. The ALJ specifically cited this evidence in assessing Ms. Hunter's RFC. Indeed, while discussing her x-rays, the ALJ expressly noted that the x-rays suggested "some degenerative disc disease." *Id.* at 25. Evaluating the MRI reports, the ALJ stated that images of Ms. Hunter's thoracic spine were "unremarkable," but "[i]mages of her lumbar spine taken the same day reveal[ed] a partially degenerated disc and bulge." *Id.* at 26. Additionally, the ALJ indicated that Ms. Hunter's bone scan "did not reveal anything significant." *Id.* Citing this specific evidence, the ALJ formulated its RFC determination. Based on the record as a whole, we conclude that the substantial evidence test has been satisfied. Ms. Hunter's arguments to the contrary would require us to reweigh the evidence and substitute our judgment for that of the Commissioner's. That we cannot do. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### B. Dr. Kabins' Opinion

Ms. Hunter next argues the ALJ improperly evaluated Dr. Kabins' opinion. Characterizing Dr. Kabins as a treating physician, Ms. Hunter claims the ALJ failed to cite specific reasons for not giving controlling weight to his opinion that she was disabled, as well as to his physical capacity assessment. This argument fails for two reasons. First and foremost, Dr. Kabins' opinion is not entitled to controlling weight because he examined Ms. Hunter only once, did not provide

the only medical evidence of the relevant time frame, and consequently, does not qualify as a treating physician. *Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir. 2003) ("Absent an indication that an examining physician presented the *only* medical evidence submitted pertaining to the relevant time period, the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." (quotation omitted)).

Second, even if Dr. Kabins qualified as a treating physician, his opinion that Ms. Hunter was totally disabled is not controlling. A physician may opine that a claimant is totally disabled, but that "opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2).

Ms. Hunter contends that Dr. Kabins' conclusions were improperly discounted. But even as a non-treating physician, Dr. Kabins' physical capacity assessment is not substantial evidence on which the ALJ could have based its decision. Here, Dr. Kabins' assessment is comprised of a single-page form with check-marks designating his conclusions without any explanation. Moreover, it was completed more than nine months after his sole examination of Ms. Hunter, and it is inconsistent with the substantial evidence in the record. Accordingly, the ALJ summarized Dr. Kabins' findings, and found "no objective evidence to

support [his] conclusions." App. at 26. The ALJ recognized that Dr. Kabins' assessments were internally inconsistent and also conflicted with Ms. Hunter's testimony concerning her abilities. Hence, the ALJ concluded that there was "no objective evidence of sufficient severity of limitation to suggest that [Ms. Hunter] cannot do at least light exertional type work." *Id*. at 27. Where a doctor's report is comprised solely of boxes checked on a form, the "evaluation form[], standing alone, unaccompanied by thorough written reports or persuasive testimony, [is] not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Under these circumstances, Dr. Kabins' assessment of Ms. Hunter's physical capacity does not constitute substantial evidence. The ALJ did not err in his treatment of Dr. Kabins' opinion.

### C. Adverse Credibility Determination

Lastly, Ms. Hunter contends the ALJ failed to identify specific evidence supporting its adverse credibility determination. This argument is without merit. "Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotation omitted). We review the ALJ's factual findings underlying its credibility determination to ensure that it is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation omitted).

At the hearing before the ALJ, Ms. Hunter testified that she believed she was disabled. The ALJ found that Ms. Hunter's "description of her limitations are not fully credible or consistent with the record." App. at 28. To support this finding, the ALJ cited Ms. Hunter's testimony describing her daily activities, which included performing household chores, preparing her own meals, minimal driving, and attending church on Sunday, and he concluded that these activities were "consistent with the performance of light work." *Id.* at 27-28. Further, the ALJ noted that none of Ms. Hunter's physicians had placed "any functional restrictions on her activities that would preclude light work activity." *Id.* at 28. Based on the record as a whole, we are satisfied that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.

### III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge