**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLENE RUDDE,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 07-5033
(D.C. No. 05-CV-632-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

In this Social Security disability and supplemental security income case,

Charlene Rudde seeks review of the Commissioner's decision that she became

disabled as of May 20, 2000, rather than her alleged onset date of February 14,

1999. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and

we AFFIRM.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Ms. Rudde was diagnosed with multiple sclerosis in 1992. On February 14, 1999, she ceased working at her job as a cashier at a drugstore, citing increased problems with her legs. She applied for benefits, alleging a disability onset date of February 14, 1999. Beginning in December 1999, she returned to the cashier job part-time, under accommodations, but in early to mid-2000, her physical condition deteriorated. Her physician put her on medical leave starting on July 20, 2000, and she resigned because her job was in jeopardy due to her increasing absences and physical difficulties.

The agency initially determined that she performed substantial gainful activity from December 1999 through July 19, 2000, so that she could not be considered disabled before July 20, 2000. The district court held that the part-time drugstore job did not constitute substantial gainful activity and remanded for further proceedings. On remand, the administrative law judge (ALJ) determined that Ms. Rudde became disabled as of May 20, 2000, but until that date she retained sufficient residual functional capacity (RFC) to perform sedentary jobs in the national economy. The ALJ's decision became the final agency decision under 20 C.F.R. §§ 404.984 and 416.1484, and the district court affirmed the decision.

II.

This appeal concerns only the period between February 14, 1999, and May 19, 2000. Ms. Rudde presents four issues, concerning (1) the assessment of her RFC; (2) the determination, at step five of the five-step evaluation process, that she could perform other jobs available in the national economy; (3) the evaluation of her credibility; and (4) the calculation of her onset date.

"The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether [he] applied the correct legal standards." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "[W]e meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but "we do not reweigh the evidence or try the issues de novo." *Id.* at 1262.

*RFC Determination*

Ms. Rudde first argues that the ALJ did not cite any evidence to support his RFC determination that until May 20, 2000, she could lift up to ten pounds, she could walk and stand for thirty minutes at a time for a total of two hours, and she could sit for a total of six hours in an eight-hour workday. She also contends that the RFC failed to include any limitations resulting from her fatigue and her

reduced ability to use her hands to grasp objects and perform fine manipulation, and the ALJ failed to address the evidence supporting such limitations.

The record contains substantial evidence to support the ALJ's RFC assessment. *See* Aplt. App., Vol. II at at 357-58 (Dr. Dalessandro's September 24, 1999, report of exam noting a "slight right limp," stating that "[t]he patient can heel-and-toe walk," and finding despite "some weakness of the right leg" that she had "a normal gait to speed, stability, and safety"); *id.* at 364 (September 30, 1999, non-examining physician's RFC assessment that she could occasionally lift up to twenty pounds and frequently lift ten pounds, could stand and/or walk about six hours in an eight-hour workday, and could sit about six hours in an eight-hour workday); *id.*, Vol. III at 372 (November 18, 1999, non-examining physician's RFC assessment that she could occasionally lift up to twenty pounds and frequently lift ten pounds, could stand and/or walk about six hours in an eight-hour workday, and could sit about six hours in an eight-hour workday); *id.* at 386 (August 21, 2000, treating physician's medical assessment stating that she could sit for a total of six hours, walk a total of one hour and stand a total of forty-five minutes in an eight-hour day, and she could occasionally lift and carry up to ten pounds); *id.* at 462 (Ms. Rudde's October 30, 2000, testimony that before she went on medical leave she could stand for a half-hour at a time and she could walk for short distances).

-4-

As for Ms. Rudde's fatigue, the RFC does include a reference to fatigue. *See id.* at 487 ("Additionally, the claimant is afflicted with symptoms from multiple sclerosis that include mild to moderate chronic pain and fatigue that are of such sufficient severity so as to be noticeable to her at all times, but nevertheless would not prevent her from being able to remain attentive and responsive in a work-setting and perform work assignments within the above limitations."). Ms. Rudde's argument rests on the premise that the ALJ was required to believe her testimony that she dozed off every time she sat for more than thirty minutes at a time. Ultimately, however, it is up to the ALJ to weigh the evidence; this court will not reweigh it. *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Similarly, regarding Ms. Rudde's hand impairments, she cites medical notations about numbness in her hands and arms, Dr. Dalessandro's September 1999 measurement of reduced grip strength in her right hand, and her testimony and that of her daughter that she experienced some numbness in her hands and fingers, experienced difficulty in opening jars and making change, and that she sometimes dropped things. But this evidence does not necessarily mean that her limitations were so severe that the ALJ was required to include them in her RFC. Again, it is the ALJ's task to weigh the evidence. While there is evidence favoring each side, the medical record does provide substantial evidence for the ALJ's determination that Ms. Rudde's hand and arm problems were not

severe enough to affect her RFC during the period at issue. *See* Aplt. App., Vol. II. at 147, 167 (May 27, 1999, and June 28, 1999, disability reports by Ms. Rudde indicating her problems working came from fatigue and "trouble with [her] legs," but not mentioning trouble with her hands); *id.* at 358 (Dr. Dalessandro's September 24, 1999, consultative examination report stating "[d]exterity of gross and fine manipulation is present"); *id.* at 365-66 (September 30, 1999, non-examining physician's RFC assessment noting that she can grasp tools and manipulate small objects and assessing no manipulative limitations); *id.*, Vol. III at 374 (November 18, 1999, non-examining physician's RFC assessment reflecting no manipulative limitations); *id.* at 387 (August 21, 2000, treating physician's statement that she could do simple grasping and pushing/pulling of controls with right hand, and simple grasping, pushing/pulling of controls, and fine manipulation with left hand); *id.* at 461 (Ms. Rudde's October 30, 2000, testimony that her problems with her hands had been "going off and on since – well, since about May, I've noticed that's worse"); *id.* at 464 (Ms. Rudde's daughter's testimony characterizing degree of difficulty with hands in February 1999 as "a little bit").

The record contains substantial evidence to support the ALJ's determination that Ms. Rudde retained the ability to perform other sedentary work up until May 20, 2000, when her condition became disabling. We recognize Ms. Rudde's contention that multiple sclerosis is an incurable, progressive disease

subject to periods of remission and exacerbation. *See Wilcox v. Sullivan*, 917 F.2d 272, 274 (6th Cir. 1990); *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). But the onset date is "the first day an individual is disabled as defined in the [Social Security] Act and the regulations." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *1 (1983). Even if her condition went into remission at some point during 1999, to obtain benefits dating back to February 14, 1999, Ms. Rudde had to be disabled as of February 14, 1999, and substantial evidence in the record supports the ALJ's determination that Ms. Rudde was not disabled as of that date.

*Step-Five Determination*

Ms. Rudde also challenges the ALJ's step-five determination that she could perform the jobs of electronic goods assembler, optical goods assembler, and security system monitor. She argues that her problems with her hands rendered it impossible to do the jobs of electronic goods assembler and optical goods assembler, and her fatigue and tendency to doze off rendered her unable to do any of the jobs. Again, these arguments depend on accepting Ms. Rudde's evaluation of her impairments, which the ALJ did not do. For the reasons discussed above, the ALJ's determination regarding the impairments is supported by substantial evidence. The ALJ was not required to allow for impairments he did not accept as true. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).

*Credibility Evaluation*

Ms. Rudde also challenges the ALJ's evaluation of her credibility. The ALJ found Ms. Rudde partially credible. He noted that for the period at issue, the clinical findings did not support her assertions of disability, and he stated:

> The medical record reflects the claimant had some difficulties in the late 1990's and the early months of 2000, including problems with fatigue. The claimant, however, was working part-time, was not using a cane, and was able to perform at least some household chores with the help of her daughter during this period. . . . Based upon these circumstances, the claimant is found only partially credible in this case. Although having difficulty throughout the pertinent period in this case, her assertions of disability prior to May 2000 are not supported by the overall record.

Aplt. App., Vol. III at 486.

The ALJ is "the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints, and explain why if he concludes those complaints are not credible. *See id.*; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (1996) (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision"). This process,

however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ cited several reasons for discounting Ms. Rudde's allegations of total disability during the period at issue. Primary among those reasons were the medical and clinical findings that were inconsistent with Ms. Rudde's allegations. Such inconsistencies are an appropriate basis for evaluating credibility. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *Kepler*, 68 F.3d at 391 (listing factors an ALJ might consider). The ALJ also appropriately considered Ms. Rudde's attempts to seek relief and her daily activities. *See Kepler*, 68 F.3d at 391; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). Because the ALJ followed *Kepler* and the credibility evaluation was supported by substantial evidence, it is not our prerogative to disturb it.

*Onset Date*

Finally, Ms. Rudde argues that the ALJ failed to properly evaluate her onset date. She contends that the record does not support the ALJ's determination that her condition worsened as of May 20, 2000, and that the ALJ "made no evaluation of whether the evidence supported an earlier onset date or whether an earlier date could be inferred from the medical evidence." Aplt. Br. at 35. She also contends that the ALJ should have sought a medical opinion in order to infer an onset date. *See* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3.

As noted above, the ALJ discussed the medical evidence in assessing Ms. Rudde's RFC. The record contains substantial evidence that Ms. Rudde's condition declined in or about May 2000. She began using a cane in that month. Aplt. App., Vol. III. at 637. On August 22, 2000, her supervisor wrote that "[s]he has always had difficulty walking and standing for a long period, but in the last two months her condition has worsened. It has caused her to miss several days of work per week routinely and when working has requested use of a chair to sit down when not busy." *Id.*, Vol. II at 187; *see also id.*, Vol. III at 634 (Ms. Rudde's testimony confirming that her attendance problems occurred in the last two months of her employment). In addition, Ms. Rudde testified that she began experiencing more difficulties with her hands in May. *Id.*, Vol. III at 461.

As for alleged error in failing to call a medical advisor to infer the onset date, "a medical advisor need be called only if the medical evidence of onset is ambiguous." *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3. Concededly, Ms. Rudde was diagnosed with multiple sclerosis in 1992, and her medical records between 1992 and 1997 document intermittent episodes of leg pain and weakness, spasticity of the right leg, tingling and weakness in her arms or hands, and fatigue. But her medical records from early 1999 do not mention such issues or otherwise support her complaints of totally

disabling impairments as of the alleged onset date, *see* Aplt. App., Vol. II at 340-41, 348, and the September 24, 1999, consultative exam reports did not support a finding of total disability, *see id.* at 356-62; *see also id.* at 363-70 (September 30, 1999, non-examining physician's RFC assessment). Thus, inferring an onset date earlier than the May 20, 2000, date assessed by the ALJ would be inconsistent with the medical evidence of record. The ALJ's failure to call a medical advisor was not error.

## III.

We recognize that multiple sclerosis is a devastating disease, and persons living with it face numerous difficulties. If this matter had been before us in the first instance, we might have reached a different conclusion. But the matter is not before us in the first instance, and we must apply our established deferential standard of review of the agency's determinations. The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge