**John L. FLEMING, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 15–cv–614–JLK**

United States District Court, D. Colorado.

Signed 10/21/2016

Jeffrey Michael Flynn, Jeffrey Flynn PC, Boulder, CO, for Plaintiff.

Danielle Alicia Pedderson, David I. Blower, Social Security Administration, Denver, CO, J. Benedict Garcia, U.S. Attorney's Office, Denver, CO, Defendant.

## CORRECTED MEMORANDUM DECISION REVERSING DENIAL OF BENEFITS AND FOR REMAND [1]

Kane, Judge.

Plaintiff John L. Fleming seeks judicial review of a final decision of the Acting

---

1. The Memorandum Decision issued in this case on October 21, 2016 (Doc. 26) erroneously directed the ALJ to find Mr. Fleming's mental impairments and treatment would cause him to be absent from work between 2 and 3 days "a week," when the proper finding based on the medical source statements of Drs. Wong and Guthrie are between 2 and 3 days "per month." (R. 425 & 432.) The error was a clerical one and is corrected *infra*.

Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Mr. Fleming claims he has been unable to work since May 2012, due to numerous physical and psychiatric impairments. After a hearing held in August 2013, an Administrative Law Judge (ALJ) rejected Mr. Fleming's disability claim at Step 4 of the five-step sequential evaluation,[2] concluding he has the residual functional capacity (RFC) to perform his past relevant work as a bottle filler, deli worker, solar panel installer, and or barista. Mr. Fleming challenges the ALJ's decision, arguing she erred by improperly weighing the medical source statements of his psychiatrist, Dr. Jean–Marc Wong, and family care physician, Dr. Guthrie. I exercise jurisdiction under 42 U.S. C. § 405(g) and REVERSE.[3]

### I.

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on August 3, 2012, asserting a disability onset date of May 10, 2012, as a result of mood disorder/affective psychosis and epilepsy. (R. 178–90, 208.)

Like the majority of all initial disability applicants, Mr. Fleming's initial claim was denied.[4] He exercised his option to request a hearing before an administrative law judge (ALJ), waiting nearly a year, until August 2013, to have one. At the time of that hearing, his attorney asked that a previously denied application of Mr. Fleming's be reopened so his disability onset date could be amended back to the earlier claim. The ALJ granted the request, resulting in a new disability onset date of October 1, 2011. (R. 633.) Mr. Fleming testified at the hearing, as did a vocational expert, who appeared at the Commissioner's behest.

#### Mr. Fleming's Medical and Treatment History.

The material facts of this case are fairly straightforward.

Mr. Fleming was 45 at the time of his claimed disability. He has a high school education with some college. He has worked in the past as a deli worker, commercial water bottle filler, solar panel installer, coffee make, and hand packager. He and a girlfriend made jewelry for awhile. He lives in Section 8 housing in Boulder, alone, and has no spouse or children. He's engaged in no substantial gain-

---

**2.** At **step one**, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009). If not, the ALJ then decides at **step two** whether the claimant has a medically "severe" impairment. *Id.* If so, at **step three**, the ALJ determines whether the impairment meets or is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004)). Absent a match in the listings, the ALJ at **step four** decides whether the claimant's impairment prevents him from performing his past relevant work. *Id.* If so, the ALJ proceeds to **step five** and determines whether the claimant has the RFC to "perform other work in the national economy." *Id. See Allman v. Colvin*, 813 F.3d 1326, 1329 n.1 (10th Cir. 2016).

**3.** Mr. Fleming's appeal was filed in this court in March 2015 and assigned to the appellate docket. After it was fully briefed in July 2015, it was reassigned for merits review to another judge. Due to the press of court business, the case was reassigned to me on August 4th of this year.

**4.** According to the Social Security Administration, nearly 65 percent of all initial disability claims are denied. *See* Social Security Disability SSI Resource Center publication, http://www.ssdrc.com/10-3.html (visited 10/15/16). *See also* SSA's Annual Statistical Report on the Social Security Disability Insurance Program, 2011, Table 60, available online at https://www.ssa.gov/policy/docs/statcomps/di_asr/2011/sect04.html#table60 (last visited 10/15/16).

ful activity since October 2011. He says his mental health problems make it hard for him to pay attention or follow directions, and as a result, he is unable to work.

At the time of his application, Mr. Fleming had been a client at Boulder Mental Health Center off and on for nearly 20 years. His treating psychiatrist was Dr. Jean–Marc Wong, who had been managing his care and medications for anxiety, racing thoughts, and sleep difficulties for the past several years. Treatment records from Dr. Wong and Boulder Mental Health Center date from 2009 to 2013. (R. 340–58, 506–46, 549–52, 553–600.) Mr. Fleming's physical care was provided by the People's Clinic (Clinica Family Health Services) in Boulder, where he was seen by family physician Dr. Pamela Guthrie and other practitioners from 2008 to 2010 (R. 434–84), and again in 2012 and 2013 for evaluations related to his disability claim and other care. (R. 365, 354–81.)

Treatment records from Boulder Mental Health show Mr. Fleming has been diagnosed over the years with seizure disorder, a mood disorder (R. 510, 557—Aug. 2010 Multiaxial Assessment), and psychotic disorder (R. 342—July 2012 Multiaxial Assessment), with global functioning (GAF) scores ranging from 60 (moderate symptoms) in 2010 to 45 (serious symptoms) in 2012. He was seen regularly by Dr. Wong, who assessed him, monitored his meds, and referred him for therapy, which he

attended (R. 560–600). The 2008–2010 Clinica records reveal a history of knee, back, elbow, and shoulder pain complaints related to an old rock climbing fall, a bicycle accident, and landscaping work for which he received pain medication, and a history of seizure disorder for which he has taken phenobarbital. (R. 434–84.) Treatment notes from late 2012 to 2013 reflect complaints of chronic pain related to his knees and back, for which he received physical therapy and improved. (R. 409, 6/13/13 PT Progress Note, pain scale 2/10–3/10; R. 625–26, 7/13/13 PT Progress Note, pain scale 1/10).

As part of his disability application process, Mr. Fleming was asked to submit to two consultative evaluations (CEs) with doctors retained by the Social Security Administration. Dr. William Graham conducted a psychiatric evaluation of Mr. Fleming on April 16, 2012, diagnosing him with generalized anxiety disorder and noting, based on Mr. Fleming's self-reporting, chronic pain, arthritis, previous stroke, and seizure disorder. (R. 601–06.) Dr. Graham's functional assessment was that Mr. Fleming had mild-to-moderate impairment in his ability to understand, carry out, and remember instructions; ability to sustain concentration, persistence, and pace; and in his adaptive abilities in taking instructions from supervisors, interacting with co-workers, and dealing with work pressures on an ongoing basis.[5] (R. 605–06.) He not-

---

5. These ratings reflect the "special" regulatory rubric for evaluating mental impairments at **steps 2** and 4 of the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520a (outlining additional "special technique" for evaluating mental impairment severity in five-step process, as well as the functional consequences of the mental disorder(s) relevant to a claimant's ability to work). The evaluation rubric for mental impairments is complex, but generally speaking, functional limitations are rated based on the extent to which a mental impairment interferes with his ability to "function independently, appropriately, ef-

fectively, and on a sustained basis," considering factors such as the "quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance [claimant] require[s], and settings in which [claimant] is able to function." *Id.* § 404.1520a(c). CEs result in "medical source opinions" the ALJ must evaluate in determining a claimant's impairments and their functional consequences, and are based on the claimant's self-reports to the consulting doctor, the doctor's observations of the claimant during the evaluation, and any information sent to the doctor by SSA field offices and

ed a mild impairment in his social functioning, and a moderate GAF score of 65. (R. 605.) Dr. Graham acknowledged the ongoing nature of Mr. Fleming's treatment and therapy through Boulder County, and recommended he undergo further evaluation to clarify his physical limitations from a bike accident when he was a senior in high school and the 15-year old rock climbing accident and fall. (R. 602, 605.)

The second CE was performed by Dr. Richard P. Carson, an internist, who was asked to evaluate Mr. Fleming's neurological (seizure) complaints and assess his ability to do work and related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, and travelling. (R. 611.) Dr. Carson's April 13, 2012, report noted Fleming's self-reported history of a seizure disorder and a knee surgery, but stated Fleming could work on a regular, continuous basis with no restrictions. (R. 614–15.)

In September and December 2012, two state agency psychologists, MaryAnn Wharry, Psy.D., and Hillel Raclaw, PhD, reviewed the medical evidence records and completed form disability questionnaires for the Commisioner. (R. 308–39.)[6] Both opined that Mr. Fleming had mild to moderate psychological limitations and could perform simple, rote occupational tasks involving only occasional interaction with supervisors and co-workers and no significant interaction with the public. (*Id.*)

Dr. Wong completed a Mental Medical Source Statement for Mr. Fleming on June 26, 2013, answering a series of questions regarding Fleming's impairments, their severity, and functional abilities. (R. 428–33.) Dr. Wong noted Fleming had been a Boulder Mental Health Center client since 1993 and that he'd been seen every three months "or sooner, if needed." Dr. Wong identified Fleming as having psychotic disorder NOS with a GAF of 45, but stated he was "stable in treatment, however, frequent interventions are necessary." He opined that Fleming "exhibits distractible attention/concentration, impaired judgment and reasoning," and described his prognosis as "fair." (*Id.*) In the sections of the report entitled Mental Abilities and Aptitudes Needed to do "Unskilled" and "Semiskilled" Work, Dr. Wong indicated Fleming had "no useful ability to function" or would be "unable to meet competitive standards" in almost all of the listed categories. (R. 430–31.) Dr. Wong explained Mr. Fleming has "great difficulty paying attention, maintaining attention, and remembering tasks"; and "has difficulty remembering completed tasks (if they were completed or not), following directions, and dates and times of appointments." *Id.* Dr. Wong also indicated Mr. Fleming was "seriously limited" or "unable to meet competitive standards" in terms of interacting appropriately with the general public, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. (R. 431.) He explained Mr. Fleming "presents well and put-together" at times, "but has troubles distinguishing social boundaries." *Id.* Finally, he indicated Mr. Fleming's impairments could be expected to cause him to be absent from work about three days per month. *Id.*

state agencies (usually called Disability Determination Services, or DDSs, *see* SSA publication "Disability Determination Process," https://www.ssa.gov/disability/determination.htm (visited October 17, 2016)).

**6.** State agency medical and psychological consultants and other program physicians work for the Social Security Administration and review records; they do not physically examine a claimant. *See* 20 C.F.R. § 404.1527(c)(3)(addressing standards for evaluating nonexamining sources of expert opinions).

People's Clinic physician, Dr. Guthrie, completed a Physical Medical Source Statement for Mr. Fleming on June 21, 2013 (R. 422–425) in which she identified impairments including his knee pain, back pain, anxiety, and insomnia, and stated he could lift no more than 10 lbs.; "occasionally" twist, stoop, bend, and climb stairs; sit for an hour at a time before needing to get up; and stand no more than 15 minutes at a time before needing to walk around. (R. 423–24.) Asked to "identify psychological conditions affecting your patient's physical condition," Dr. Guthrie checked the "anxiety" and "[other] psychological factors" boxes. (R. 423.) She indicated his "variable emotional status" rendered him capable of "low stress" work, and that he could be expected to miss about 2 days of work a month as a result of his impairments and their treatment. (*Id.*) Asked what percentage of an average workday Mr. Fleming's symptoms would render him "off task" (i.e., what percentage of a typical workday would his symptoms "likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks"), Dr. Guthrie answered 20%. (R. 425.) Dr. Guthrie also completed a Pain Evaluation for Mr. Fleming that same day, identifying his knees and back as pain sources, stating he'd had the pain for more than 10 years, and indicating his pain was of sufficient severity to interfere with the attention and concentration needed to perform even simple work tasks 6%–33% of an 8–hour workday. (R. 419.) Asked in the Pain Evaluation whether "the patient can work," Dr. Guthrie stated, "No, but less [due to] pain than [the] combination of pain and mental health." (*Id.*)

*The ALJ's Decision.*

In a written decision dated August 28, 2013 (R. 26–38), the ALJ determined at Step 2 of the sequential analysis Fleming had the following mental impairments—psychotic disorder, attention deficit hyperactivity disorder (ADHD), and anxiety—and that each of these met the regulatory definition of "severe."[7] (R. 28–29, citing 20 C.F.R. §§ 404.1520(c)(applicable to Mr. Fleming's Title II SSDI/DIB claim) and 416.920(c)(applicable to his Title XVI SSI claim.))[8] She nevertheless concluded at Step 4 of the analysis that Mr. Fleming retained the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), meaning he can sit, stand or walk for 6 hours each, and reach and climb ramps and stairs. (R. 31.) The ALJ determined Fleming could not work at a production rate pace, but could perform goal-oriented work, such as office cleaner, and could occasionally interact with supervisors and coworkers, but not the public. (*Id.*) At Step 4, the ALJ concluded Mr. Fleming was not disabled because, based on the testimony of the vocational expert, he remained capable of performing his past relevant work as a water filler, panel installer, coffee maker, deli worker, and hand packager. (*Id.* at 37.)

In reaching her conclusions, the ALJ was persuaded by the state agency (nonexamining) expert opinions of Drs. Wharry and Raclaw, and the opinion of consultative examiner Dr. Graham, while assigning only partial weight to the Medical Source opinions of Fleming's treating physicians Drs. Wong and Guthrie. In particular, the ALJ found Dr. Wong's opinions regarding

---

7. An impairment, or combination of impairments, is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 1520(c).

8. Because the regulatory standards for assessing disability under Titles II and XVI of the Social Security Act are the same, I will limit my citations to Part 404 of 20 C.F.R. (governing disability determinations under Title II (SSDI or DIB claims) from here forward.

the impact of Mr. Fleming's mental impairments inconsistent with a record showing medication is effective at reducing Mr. Fleming's symptoms and that Mr. Fleming had being "doing better," "sleeping well," and "has been stable" for six months. (R. 35–37.) She accorded "little weight" to Dr. Guthrie's Pain Evaluation and opinion that pain would cause him to be "off task" for 6%–33% of an average workday, citing a lack of facts in the record to support regular treatment, diagnosis, medication, "or even [allegation]" of a severe physical impairment." (R. 36.) She similarly afforded Dr. Guthrie's Physical Medical Source Opinion only "partial weight," stating the "extreme" physical and mental limitations in her Physical Medical Source Statement were also unsupported by the record. (*Id.*) She rejected the "occasional" off-task rating from the Pain Evaluation and the 20% off-task rating in the Medical Source Opinion on grounds those opinions were "outside Dr. Guthrie's area of expertise in that she is not a specialist in psychology." (*Id.*)

The Appeals Council denied a request for review, so the August 28, 2013, decision stands as the final decision of Commissioner.

## II.

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether she applied correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)(citing *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992)).

Importantly, "all the ALJ's required findings must be supported by substantial evidence," and she must consider all relevant medical evidence in making those findings. *Grogan* at 1262 (internal quotes and citations omitted). Therefore, "in addition to discussing the evidence supporting [her] decision, the ALJ must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996)). While I may not reweigh the evidence or try the issues *de novo*, I must "meticulously" examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *See id.*

Mr. Fleming argues the ALJ erred in according only partial weight to the Medical Source Statements/functional assessments of Drs. Wong and Guthrie, resulting in an RFC and application of vocational factors unsupported by substantial evidence in the record.

## II.

### ANALYSIS

In making her determination that Mr. Fleming could perform his past relevant work, the ALJ gave full weight to Mr. Fleming's consultative evaluators and non-examining state agency experts and only partial weight to treating physicians Dr. Wong and Dr. Guthrie. The stated reasons for reducing the weight afforded Dr. Wong's Mental Medical Source Report were focused on various statements of well-being Mr. Fleming made to Dr. Wong and other Boulder Mental Health Center providers during the course of his treatment and two specific facts from Dr. Wong's treatment records: (1) that Mr. Fleming requires Valium "only a few times a week" (ALJ Ord. at pp. 8, 12 (R. 33, 37)

citing Hg. Exs. 5F, 9F (R. 340–58, 383–95)); and (2) a statement indicating Mr. Fleming "has been stable for at least 6 months with medication." (*Id.* (citing Hg. Ex. [5]F (R. 358)).[9] Both statements, but particularly the latter, are troubling. The ALJ's use of the present perfect tense ("has been stable") at the time of her order implies that at the time of his hearing in August 2013, Mr. Fleming had been "psychiatrically stable" for the previous six months. A review of Ex. 5F, however, reveals it to be a treatment plan for Mr. Fleming dated 12/29/2011, indicating that Mr. Fleming had been "psychiatrically stable" for the six months before that, and wanted to give meds-only status a try beginning then. (R. 358.) It is clear from the record that Mr. Fleming was not completely successful in this goal, having been seen thereafter for interventions (R. 344 (7/9/2012; "thinks he may have schizophrenia"), R. 390 (7/8/2013, exhibiting paranoia)) medication abuse/problems (R. 346 (2/13/12)); and in-person counseling (R. 383 (5/10/2013). Any assertion that Mr. Fleming had been stable for the six months before his social security hearing (or the six months leading up to his August 2012 DIB/SSI application date), is not supported by this record.

■ The ALJ's rejection of Dr. Guthrie's opinions that Fleming's physical and psychological conditions rendered him likely to be "off task" for =20% of every working day (R. 419, 423–24), is similarly problematic. The stated reason for rejecting these opinions from Dr. Guthrie's Pain Evaluation and Physical Medical Source Statement were that they were "outside Dr. Guthrie's area of expertise in that she is not a specialist in psychology." (R. 36.) Aside from the Catch 22 of being asked to complete a medical functional assessment form, answering the questions posed, and then being told you're not qualified to provide the requested answers,[10] the reasons given for rejecting Dr. Guthrie's opinion are contrary to applicable legal standards. A family physician is a medical doctor trained to diagnose and treat a variety of mental conditions, including anxiety and depression (and seizure disorder), and may prescribe medications for them. Psychologists, however expert in their fields, may not. The ALJ had no problem giving weight Dr. Guthrie's opinion on the same form that Fleming was "capable of low stress work" (R. 36), and expressed no concern that Dr. Guthrie is not a "specialist" in vocational rehabilitation. The ALJ may not pick and choose which aspects of a treating provider's medical opinion to believe, relying on only those parts favorable to a finding of nondisability. *Hamlin v. Barnhart,* 365 F.3d 1208, 1219 (10th Cir. 2004)(citing *Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984)).

Moreover, the ALJ's stated reason for giving weight to Dr. Guthrie's assessment of Fleming's ability to work—that "Dr. Guthrie has experience treating the claimant and is familiar with his conditions" (R. 36)—applies equally to Dr. Guthrie's opin-

---

9. The ALJ's citation was to Ex. 6F (R. 359 on appeal), but that is page one of a 6–page treatment note of Dr. Guthrie's. The intended reference is clearly to the last page of the treatment note immediately preceding Dr. Guthrie's records, which is p. 19 of Ex. 5F, Dr. Wong's "Meds–Only Treatment Plan" for Mr. Fleming. (R. 358.)

10. The Physical Medical Source Statement in this case is a fillable form that explicitly *asks* the treating medical doctor to "identify any psychological conditions affecting your patient's physical condition," and provide boxes for the physician to check conditions such as "depression," "anxiety," or "[other] psychological factors affecting physical condition." (R. 423.) Dr. Guthrie, as she was asked, checked the "[other] psychological factors" and "anxiety" boxes, and wrote "ADD" in the blank left for "other." (*Id.*)

ion that Fleming's combined physical and psychological problems render him likely to be "off task" for significant portions of an average workday. Dr. Guthrie is a long-standing medical treatment provider of Mr. Fleming, and her observations about his limitations constitute specific medical findings that must be considered absent stated, viable grounds for rejecting them. *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994). She is qualified to opine about his physical and mental functional limitations and her opinion cannot be rejected because she is not a "specialist in psychology." *See* 20 C.F.R. § 404.1527(c)(ii)("if your ophtahalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain). Finally, her opinions are completely consistent with Dr. Wong's concerns about Mr. Fleming's "distractible attention/concentration" and "impaired judgment and reasoning" (R. 428), and his opinion that Mr. Fleming's mental health issues could be expected to result in his being absent from work "about three days per month." (R. 432.) Given full weight, these opinions would have affected the ALJ's RFC determination and her vocational assessment of Mr. Fleming's ability to perform his past relevant work. Because the ALJ's rejection and weighting of these opinions contravene applicable legal standards, I cannot find her residual functional capacity or disability conclusions at Step 4 of the sequential analysis to be supported by substantial evidence.

Before concluding, I step back from the often formulaic application of appellate standards in social security appeals to make the following observation:

In the end, this is a paradigmatic case for why the opinions of treating physicians should be weighted greater than the opinions of consultants and agency record reviewers who have no relationship with the real person. Mr. Fleming is fortunate to live in an area where community mental and physical health providers are accessible and affordable to him, and it is abundantly clear on this record that he had real and meaningful long-term relationships with his treatment providers, particularly Dr. Wong. Dr. Wong's detailed notes, along with the notes of other physicians, PAs, and counselors at Boulder Mental Health, show a deep understanding of Mr. Fleming's mental health history and a true regard for him as a person. The record shows that the People's Clinic staff, specifically including Dr. Guthrie, also had a longstanding, caring treatment relationship with Mr. Fleming.

"[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988). *See* 20 C.F.R. §§ 404.1527(d)(1), (2); Soc. Sec. R. 96–6p, 1996 WL 374180, at *2. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)(citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)). Drs. Wong and Guthrie fall clearly into this category of physician. I conclude ALJ erred in picking and choosing among their various opinions, rejecting some and according partial weight to others. Their care and consideration of Mr. Fleming mental and physical health status for a period of years deserves better.

The ALJ's Decision finding Mr. Fleming not to be disabled is REVERSED and the matter REMANDED for reconsideration on Steps 3, 4, and potentially 5 of the sequential analysis, applying the proper legal standards to the opinions of Drs. Wong and Guthrie under 20 C.F.R. §§ 404.1527 & 1527a (and 20 C.F.R. §§ 416.927 & 927a) and engaging specifically in a determination of whether their medical opinions are entitled to controlling weight. The ALJ is directed to find that the combination of Mr. Fleming's physical and mental health issues would result in him being off-task for at least 20% of a given workday, and that his mental impairments and treatment would cause him to be absent from work between 2 and 3 days per month.