FILED
United States Court of Appeals
Tenth Circuit

May 24, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN R. GREEN,

Plaintiff - Appellant,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

Defendant - Appellee.

No. 17-7032
(D.C. No. 6:16-CV-00024-KEW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

John R. Green is an Army veteran who has been rated 100 percent
unemployable by the Veteran's Administration (VA) due to his service-related
conditions. Based on this rating, he receives VA disability benefits. He appeals from
the district court's order affirming the Commissioner's decision denying his
application for Social Security disability insurance benefits. We reverse and remand
for further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Mr. Green filed his application for Social Security benefits on January 27, 2015, alleging he became disabled on May 30, 2012. The Commissioner denied his application, both initially and on reconsideration. On October 8, 2015, Mr. Green received a hearing before an administrative law judge (ALJ).

The ALJ determined that Mr. Green had severe impairments including "degenerative disc disease of the cervical and lumbar spines; knee and hip impairments; status post abdominal gunshot wound; major depressive disorder; and [post-traumatic stress disorder (PTSD)]." Aplt. App., Vol. 2 at 13. Given these impairments, the ALJ assessed he had the residual functional capacity (RFC)

> to perform medium work . . . except with lifting no more than 50 pounds at a time; frequent lifting or carrying up to 25 pounds; standing/walking 6 hours out of an 8-hour workday; and sitting 6 hours out of an 8-hour workday. The claimant is able to understand, remember, and [carry out] simple instructions consistent with unskilled work that is repetitive and routine in nature and able to relate and interact with co-workers and supervisors on a work-related basis only with no to minimal interaction with the general public. The claimant can adapt to a work situation with these limitations [and] restrictions and his medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting.

Id. at 15.

The ALJ further determined that with his RFC, Mr. Green was capable of performing his past relevant work as a spot welder and a feed loader. Alternatively, given his age, education, work experience, and RFC, there were other jobs that existed in the national economy that he could perform, including hardware assembler, final inspector, and laminator. The ALJ therefore concluded that Mr. Green had not been under a disability from May 30, 2012, through the date of his decision. The

2

Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

On appeal, Mr. Green raises two issues: whether the ALJ failed to properly consider the disability rating assessed by the VA, and whether the ALJ properly considered a consulting physician's opinion. Because the ALJ failed to give proper consideration to the VA's disability rating and in particular to the evidence underlying that determination, we reverse and remand for further proceedings.

**1. VA Disability Rating**

The VA determined in 2013 that Mr. Green had an overall or combined rating of 80% disability. This rating was attributed primarily to his PTSD, to which the VA assigned a 70% disability rating. The VA also assigned ten percent disability each for his lumbar strain, left and right knee strain, and right hip strain. It paid Mr. Green disability benefits at the 100% rate, however, finding that he was "unemployable due to [his] service-connected disabilities." Aplt. App., Vol. 2 at 185.

In his decision, the ALJ did not mention the VA's unemployability finding, but noted the service-connected disability percentages assigned by the VA and then analyzed the VA's disability rating, giving it little weight. The ALJ reasoned:

3

The disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. [The] Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the [Social Security] Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings.

*Id.* at 17-18.

Under the regulations in effect at the time of the ALJ's decision

[a] decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504 (2015).[1]

"Although findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005). In both *Baca* and *Grogan*, the ALJ completely failed to discuss the claimant's VA disability rating. In this case, by contrast, the ALJ did discuss the VA rating, but found it of little

---

[1] For claims filed on or after March 27, 2017, the agency has amended its regulations to state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." 20 C.F.R. § 404.1504 (2017).

4

probative value because of the differing standards that apply to VA disability determinations. The question is whether the ALJ provided sufficient consideration to the VA's determination.

In discounting the VA's rating the ALJ identified three factors that he was required to analyze, but that the VA had not been required to consider: (1) a function-by-function assessment of a claimant's capacities; (2) a determination of whether the claimant was able to perform his past relevant work; and (3) a determination of whether the claimant was able to perform work that exists in significant numbers in the national economy. The ALJ did not explain how his analysis of these factors in Mr. Green's case had caused his conclusions about disability to diverge from the VA's. But assuming the ALJ's citation of these factors provided a sufficient explanation for his rejection of the VA's disability rating,[2] Mr. Green points out a related but more serious deficiency in the ALJ's analysis. He argues that in addition to the VA's ultimate determination about disability, its disability determination referenced "specific factual finding[s] or evidence" that he asserts "should have changed the [ALJ's] decision," but that the ALJ failed to consider. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

Although "an ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as

---

[2] The parties cite several unpublished decisions from this circuit on this issue. Such unpublished panel decisions are not binding on us, *see, e.g.*, *Lexington Ins. Co. v. Precision Drilling Co.*, 830 F.3d 1219, 1224 (10th Cir. 2016), and we need not discuss them here.

significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted). This duty seems particularly significant where another agency has relied on significant, probative evidence as the basis for its disability determination, and the ALJ has failed even to mention that evidence. *See Grogan*, 399 F.3d at 1262 ("Although another agency's determination of disability is not binding on the Social Security Administration . . . it is evidence that the ALJ must consider and explain why he did not find it persuasive.").

In determining that Mr. Green's PTSD was disabling in combination with his other impairments, the VA cited Mr. Green's "[n]ear-continuous panic affecting the ability to function independently, appropriately and effectively"; his difficulties "in adapting to a worklike setting," "in adapting to stressful circumstances," and "in establishing and maintaining effective work and social relationships"; his "[o]ccupational and social impairment with reduced reliability and productivity"; and his panic attacks, chronic sleep impairment, anxiety, suspiciousness, and depressed mood. Aplt. App., Vol. 3 at 455. To substantiate these conclusions, the VA relied on the extensive psychological evidence of Mr. Green's years of treatment for PTSD and associated anxiety and depression. *See id*. at 454 (listing evidence relied on by VA).

The mental-health evidence in this case, on which the VA relied, makes up a significant portion of the more than 1,700 pages of administrative record. The ALJ disposed of this evidence in less than a page. *See id.*, Vol. 2 at 17. He mentioned only one specific piece of direct medical evidence concerning Mr. Green's mental state, a progress note from December 9, 2014. The remainder of his discussion of the

6

issue was devoted to the opinions and conclusions of agency non-examining psychologists and to the results of a consultative psychological examination.

The ALJ's discussion of this opinion evidence was hardly exemplary. The ALJ stated he assigned great weight to the medical opinion of Dr. Gunter, a non-examining agency psychologist, finding it "consistent with the totality of evidence." *Id.* But to explain the record support for Dr. Gunter's opinions, the ALJ provided only a word-for-word (though unattributed) direct quotation *from Dr. Gunter's own analysis. Compare id.* at 17 *with id.* at 101. Although this may show the ALJ believed Dr. Gunter's conclusions were consistent with Dr. Gunter's review of the medical evidence, it reflects no independent corroboration of that analysis from the medical record.

The ALJ also discussed the results of a consultative psychological examination of Mr. Green, performed on May 5, 2015, by Kathleen Ward, Ph.D. Notably, the ALJ's summary omitted certain significant details of Dr. Ward's report, including that Mr. Green was involved in an incident in Afghanistan in which a ten year old child was accidentally killed, that the incident involved a "half-burnt 10 year old boy," *id.*, Vol. 8 at 1698, that he suffers from frequent flashbacks, and that he was previously hospitalized in Alaska out of concern about suicide risk. The ALJ's unattributed quotation from Dr. Gunter's analysis includes Dr. Gunter's summary of Dr. Ward's report. This summary opines that Mr. Green "was not as anxious as might be expected if his PTSD was debilitating," *see id.* at 17, 101—an observation not made by Dr. Ward—but it omits Dr. Ward's specific observations that Mr. Green

7

was "on alert to a limited degree" and that he "dissociate[d]" during discussion of traumatic events. *Id.* at 1700.

Turning to some examples of the medical records the VA relied on but the ALJ did not discuss, on October 31, 2013, Mr. Green reported that he was "[n]ervous, mad and agitated all the time," that he "can't get along with normal people," and got "mad about things that are not big deals." *Id.* at 1601 (internal quotation marks omitted). He stated he was "agitated and stressed most of the time." *Id.* (internal quotation marks omitted). He reported a "flashback" incident at his previous job at a welding shop when a PVC line exploded and "[t]he sound reminded me of Afghanistan." *Id.* (internal quotation marks omitted). He left the job as a result of the flashback. *See id.*, Vol. 3 at 505. Mr. Green stated he "jumps at noises, sweats profusely and finds his heart palpitating at various times." *Id.*, Vol. 8 at 1601. He reported he was unable to remain employed because "everything and everyone agitates me." *Id.* at 1601-02 (internal quotation marks omitted). The licensed clinical social worker who met with him reported that his mood was "depressed" and "anxious." *Id.* at 1602.

On November 7, 2013, a psychiatrist assessed Mr. Green with "anxiety and depressive symptoms as well as insomnia." *Id.* at 1597. The psychiatrist provided a detailed description of his symptoms of anxiety and depression, along with his social difficulties and memory problems. *Id.* at 1596.

The record also includes a questionnaire from September 2013 completed by a VA psychologist who assessed Mr. Green with "[o]ccupational and social

8

impairment" due to his PTSD. *Id.*, Vol. 3 at 504. The questionnaire noted that Mr. Green had "experienced, witnessed or was confronted with an event that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others," resulting in "intense fear, helplessness or horror." *Id.* at 505. It described his symptoms, including anxiety and suspiciousness, a depressed mood, panic or depression, and a chronic sleep impairment. The record contains an additional questionnaire from November 2, 2011, which noted similar symptoms. *See id.*, Vol. 5 at 933-44. This, and much more, evidence is present in the record, relied on by the VA, but not discussed in the ALJ's decision.

Although the ALJ was not bound by the VA's conclusion that Mr. Green's combined symptoms were disabling, he was required to give the VA's determination, and the evidence underlying it, more than a cursory treatment and a perfunctory dismissal. Because the ALJ failed to conduct a proper analysis of this evidence, we remand to the district court with instructions to remand to the Commissioner for further proceedings in accordance with our explanation of the ALJ's duties in this order and judgment.

### 2. Consulting Physician's Opinion

Mr. Green also argues that the ALJ improperly evaluated and rejected the opinion of a consultative medical examiner, Dr. Ronald Schatzman. Dr. Schatzman examined Mr. Green on August 27, 2013. He noted Mr. Green's complaints and statements about his medical history, but he does not appear to have reviewed any of Mr. Green's medical records. Dr. Schatzman performed a physical examination of

9

Mr. Green, recording essentially normal findings for nearly all of the bodily systems or functions he examined. *See* Aplt. App., Vol. 3 at 424-25.

Dr. Schatzman concluded his report with the following assessment:

> 1. Abdominal pain from gunshot wound
> 2. Back pain
> 3. Hip pain
> 4. Depression
> 5. PTSD through the VA
> 6. *This gentleman is significantly impaired from activities of daily living*.

*Id.* at 425 (emphasis added).

The ALJ thoroughly described Dr. Schatzman's findings, but gave the above-highlighted statement little weight, reasoning "[t]here is nothing in the objective evidence to show this opinion would be substantiated." *Id.*, Vol. 2 at 16. Although the ALJ's analysis of Dr. Schatzman's unexplained statement appears to be supported by substantial evidence, the ALJ may need to reevaluate his reasoning in light of the remand we have ordered for reconsideration of the medical evidence.[3]

### 3. Adverse Credibility Finding

The index to Mr. Green's opening brief endorses a third issue, whether the ALJ failed to properly assess his credibility, but he presents no argument on this issue in the opening brief. "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."

---

[3] Mr. Green refers briefly to the ALJ's alleged failure to weigh the other medical reports in the record. *See* Aplt. Opening Br. at 27-28. This inadequately developed argument has been waived. *See Bronson v. Swensen*, 500 F.3d at 1099, 1104 (10th Cir. 2007).

*Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). But here, our review of the ALJ's decision reveals what appear to be deficiencies in his credibility analysis that we feel compelled to mention in light of the remand we now order.

The ALJ opined that Mr. Green's statements concerning his symptoms were "not entirely credible for the reasons explained in this decision." Aplt. App., Vol. 2 at 16. It is unclear which of Mr. Green's statements the ALJ found not credible. For example, he did not even mention his testimony about PTSD in his summary of Mr. Green's hearing testimony. *See id.*

Although the ALJ reported that Mr. Green's receipt of unemployment benefits "significantly reduce[d his] credibility," he immediately stated that his denial decision was "not based on receipt of unemployment benefits." Aplt. App., Vol. 2 at 18. It is thus unclear whether and to what extent the ALJ relied on Mr. Green's receipt of unemployment benefits in reaching his decision. Perhaps the ALJ meant that the denial was not based *solely* on Mr. Green's receipt of unemployment benefits. Or perhaps (though this would seem to contradict his previous statement), he meant that the receipt of unemployment benefits played no role in his decision at all. Such a significant ambiguity concerning the very important issue of the claimant's credibility is troubling. The ALJ would be well advised to reexamine the basis for his credibility findings on remand.

The district court's decision is reversed, and this case is remanded to the district court, with instructions to remand to the Commissioner for further

proceedings in accordance with this order and judgment.

Entered for the Court


Mary Beck Briscoe
Circuit Judge